Laura B. Dowgin, Esq.
COZEN O'CONNOR
45 Broadway Atrium 16th Floor
New York, New York 10006
Tel: (212)-453-3775
Fax: (646)-461-2087
Email: LDowgin@cozen.com
*Attorneys for Plaintiff*
*Hiscox Insurance Company, Inc.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

HISCOX INSURANCE COMPANY, INC.
*Plaintiff*

v.                                                      DOCKET NO. 18-cv-10222

CURTIS BORDENAVE and BUSINESS
MOVES CONSULTING, INC., d/b/a
BUSINESS MOVES, KHALED M.
KHALED and ATK ENTERTAINMENT, INC.
*Defendants*

## COMPLAINT FOR DECLARATORY JUDGMENT

Hiscox Insurance Company, Inc. ("Hiscox") files its Complaint for Declaratory Judgment against the Defendants Curtis Bordenave and Business Moves Consulting, Inc. d/b/a Business Moves (together, "Business Moves"), Khaled M. Khaled ("DJ Khaled") and ATK Entertainment, Inc. ("ATK") (together, "Underlying Plaintiffs") pursuant to 28 U.S.C. §2201(a), and in support thereof, states as follows:

## NATURE OF THE ACTION

1.      This is an action for a declaratory judgment with respect to two policies issued by Hiscox to Business Moves. The first policy is a commercial general liability policy no. UDC-1920438-CGL-17, issued by Hiscox to Business Moves for the policy period March 2, 2017 to

1

March 2, 2018 (the "CGL Policy"). A copy of the Policy is attached as Exhibit A to this Complaint and incorporated herein. The second policy is a professional liability policy no. UDC-1920438-EO-17, issued by Hiscox to Business Moves for the policy period March 2, 2017 to March 2, 2018 (the "PL Policy"). A copy of that Policy is attached as Exhibit B to this Complaint.[1] The CGL Policy and the PL Policy are referred to together as the "Policies."

2.      Hiscox is currently affording a defense to Business Moves under the CGL Policy pursuant to a reservation of rights with respect to an underlying lawsuit pending in this District styled *Khaled M. Khaled and ATK Entertainment, Inc. v. Curtis Bordenave and Business Moves Consulting Inc. dba Business Consulting,*[2] Docket No. 1:18-cv-05187 (the "Underlying Action"). A copy of the complaint in the Underlying Action is attached as Exhibit E to this Complaint.

3.      The Underlying Action involves Underlying Plaintiff's claims of federal trademark infringement and civil rights and privacy violations under New York statutory law, among other causes of action. See Exhibit E.

4.      By way of this lawsuit, Hiscox seeks a declaration that the Policies do not afford coverage to Business Moves for the Underlying Action, and therefore Hiscox is not obligated to pay for its defense and owes it no further duties or liabilities, contractual or otherwise.

5.      Defendants DJ Khaled and ATK are interested parties to this litigation, as the parties seeking relief from Business Moves in the Underlying Action.

---

1 Hiscox also issued two renewal policies, one in Commercial General Liability, UDC-1920438-CGL-18, attached as Exhibit C, and one in Professional Liability, UDC-1920438, attached as Exhibit D. There are no policy form changes, either by form number or revision, between the two policy years, so the policy assertions made as to the 2017-18 policy year apply with equal validity to the 2018-19 policy year.
2 The caption in the Underlying Action appears to contain a typographical error, as the remainder of the Underlying Action refers to the party as "Business Moves Consulting, Inc. dba Business Moves."

## THE PARTIES

6.     Plaintiff, Hiscox Insurance Company, Inc., is an Illinois corporation with its domicile and principal place of business in Illinois.

7.     Defendant Khaled M. Khaled is an individual residing in Miami-Dade County, Florida, with his domicile in Florida.

8.     Defendant ATK Entertainment, Inc. is a Florida registered corporation with its principal place of business and domicile in Florida.

9.     Defendant Curtis Bordenave is an individual residing in Dallas, Texas, with his domicile in Texas.

10.     Defendant Business Moves Consulting, Inc. is a Mississippi registered corporation with its principal place of business and domicile in Texas.

## JURISDICTION AND VENUE

11.     This is an action for declaratory judgment under 28 U.S.C. §2201 (the Declaratory Judgment Act). This Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. Section 1332 because the parties in this case are all diverse to each other and the amount in controversy exceeds the sum of Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs. Specifically, the cost of defense for the Underlying Action which is being currently paid by Hiscox, has been anticipated to exceed $500,000.

12.     Personal jurisdiction is appropriate as to all parties, as all Defendants are currently engaged in litigation before this Court in the Underlying Action. As this suit seeks judicial determination as to whether there is coverage under the Policies for Business Moves, this Court has specific jurisdiction over this declaratory judgment action.

3

13.     Venue is proper in this District pursuant 28 U.S.C. §1391(b)(2), in that a substantial part of the events giving rise to the claim occurred in this District. Specifically, the Underlying Action for which coverage is at issue alleges that Business Moves violated Underlying Plaintiffs' rights under New York law and made defamatory statements to New York corporations.

### THE HISCOX CGL INSURANCE CONTRACT

14.     Hiscox issued Commercial General Liability Policy number UDC-1920438-CGL-17 to "Business Moves" for the policy period March 2, 2017 to March 2, 2018. See Exhibit A.

15.     Defendant Curtis Bordenave is an insured, but only with respect to his duties as an officer or director of Business Moves.

16.     Coverage A of the CGL Policy affords coverage to Business Moves for those sums that it becomes legally obligated to pay as damages because of "bodily injury" or "property damage" during the policy period caused by an "occurrence." See Exhibit A.

17.     The CGL Policy contains the following relevant exclusions, applicable to Coverage A:

This insurance does not apply to:

   **a.     Expected or Intended Injury**

   "Bodily injury" or "property damage" expected or intended from the standpoint of the insured.

   **o.     Personal and Advertising Injury**

   "Bodily injury" arising out of "personal and advertising injury."

See Exhibit A.

18.     Coverage B of the CGL Policy affords coverage to Business Moves for those sums that it becomes legally obligated to pay as damages because of "personal and advertising injury"

caused by an offense committed during the policy period. See Exhibit A.

19.     The CGL Policy contains the following relevant exclusions, applicable to Coverage B:

This insurance does not apply to:

    **a.**    **Knowing Violation of Rights of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."

    **b.**    **Material Published with Knowledge of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

    **d.**    **Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

    **i.**    **Infringement of Copyright, Patent, Trademark or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. . . . However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

    **l.**    **Unauthorized Use of Another's Name or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

See Exhibit A.

20.     The CGL Policy contains the following relevant definitions, applicable to both Coverage A and Coverage B:

1.      "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.

3.      "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

13.     "Occurrence" mean an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14.     "Personal and Advertising Injury" means injury . . . arising out of one or more of the following offenses:

     d.      Oral or written publication, in any manner, of material that slanders or libels a person or organization's goods, products or services;

     e.      Oral or written publication, in any manner, or material that violates a person's right of privacy;

     f.      The use of another's advertising idea in your "advertisement."

     g.      Infringing upon another's copyright, trade dress or slogan in your "advertisement."

17.     "Property damage" means:

     a.      Physical injury to tangible property, including all loss of use of that property . . .

     b.      Loss of use of tangible property that is not physically injured.

See Exhibit A.

## THE HISCOX PL INSURANCE CONTRACT

21.     Hiscox issued Professional Liability Policy number UDC-1920438-CGL-17 to "Business Moves" for the policy period March 2, 2017 to March 2, 2018. See Exhibit B.

22.     Defendant Curtis Bordenave is an insured, but only with respect to his duties as an employee of Business Moves.

6

23. The coverage under the PL Policy affords coverage to Business Moves for those sums that it becomes legally obligated to pay as damages and claims expenses because of any "covered claim" under the terms of the PL Policy for "wrongful acts." See Exhibit B.

24. The PL Policy contains the following relevant exclusions, applicable to PL Coverage:

This insurance does not apply to any claims:

A. based upon or arising out of any actual or alleged fraud, dishonesty, criminal conduct, or any knowingly wrongful, malicious, or intentional acts or omissions... unless the "otherwise covered intentional acts or omissions results "in a personal injury."

B. based upon or arising out of any actual or alleged gaining of any profit or advantage to which You were not legally entitled.

M. based upon or arising out of any actual or alleged infringement of any copyright, trademark, trade dress, trade name, service mark, service name, title, slogan or patent or theft of trade secret.

N. based upon or arising out of any actual or alleged false or deceptive advertising of Your goods or services or misrepresentation in advertising of Your goods or services, including but not limited to any wrongful description of prices or Your goods or services or the quality or performance of Your goods or services.

25. The PL Policy contains the following relevant definitions:

C. Claim means any written demand for Damages or for non-monetary relief.

E. Damages means a monetary judgment or monetary award that You are legally obligated to pay (including pre- or post-judgment interest) or a monetary settlement negotiated by US with Your consent.

Damages shall not mean and We shall not be obligated to pay:

1. fines, penalties, taxes, sanctions levied against You;

3. the return, reduction or restitution of Your fees, commissions, profits or charges for goods provided or services rendered, including any over-charges, or cost over-runs;

7

4.      liquidated damages;

5.      Your cost of complying with injunctive relief.

L.      Personal injury means injury, other than bodily injury, arising out of one or more of the following offenses:

1.      false arrest, detention or imprisonment;

2.      malicious prosecution;

3.      wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy or premises;

4.      slander, libel, defamation or disparagement of goods, products or services; or

5.      oral or written publication of material in connection with Your advertising that violates a person's right of privacy.

O.      Professional services means only those services specified in Endorsement to this Policy as performed by or on behalf of an Organization for others for a fee or other compensation.

U.      Wrongful Act means any actual or alleged breach of duty, negligent act, error, omission or personal injury committed by your in the performance of your professional services.

V.      You or Your means any:

1.      Organization;
2.      Employee;

26.     Endorsement DPL E5018 CW (08/15) modified the definition of Professional

Services under the PL Policy, as follows:

O.      Professional services means management consulting and/or business consulting services performed for others for compensation, including but not limited to:

i.      advising on general business operations, strategy, organizational

8

structure, human resources, marketing and sales campaigns, systems or ecological/"green" issues; and

ii.     project management.

27.    Endorsement DPL E5018 CW (08/15) added the following relevant exclusion to the PL Policy, as follows:

Clause III. EXCLUSIONS is amended to include the following at the end thereof:

MC-J. based upon or arising out of Your performance or failure to perform Professional Services in connection with the following industries, fields or activities:

23.     Your sale of any goods or products …

See Exhibit B.

## THE UNDERLYING ACTION

28.    On June 6, 2018, Underlying Plaintiffs filed the Underlying Action against Business Moves. See Exhibit E.

29.    In the Underlying Action, Underlying Plaintiffs assert that Business Moves is a "trademark pirate," who is in the business of "appropriating names or trademarks popularized by others and attempting to assert trademark rights over them – either for the purpose of unfairly capitalizing on the goodwill associated with the names and trademarks through the sale of t-shirts bearing them, or for the purpose of extracting a large payment from the targets of Defendants' predatory conduct." See Exhibit E, ¶1, 39.

30.    Specifically, Underlying Plaintiffs allege that shortly after the birth of DJ Khaled's son, Asahd Tuck Khaled, Business Moves "intentionally targeted Khaled and his son by using and applying to register the trademarks ASAHD, ASAHD COUTURE, A.S.A.H.D. A SON AND HIS DAD, and WE THE BEST LIFESTYLE in connection with purported clothing and magazine

publishing businesses." The Underlying Action alleges that "[t]ellingly, Defendants have used the distinctive spelling of 'Asahd' that Khaled and Asahd's mother chose for their son." See Exhibit E, ¶3.

31.    Moreover, ATK, the business opened by DJ Khaled and his wife to protect their infant son's interests, allegedly had a business collaboration with Haddad Brands, the exclusive licensing agent for children's clothing under the Nike JORDAN brand. See Exhibit E, ¶37.

32.    In paragraph 4 of the Underlying Action, it is alleged that Business Moves has repeatedly defamed ATK, falsely attacking its reputation and seeking to harm its business..." See Exhibit E, ¶4. Underlying Plaintiffs further assert that "Defendants have intentionally timed their attacks to try to maximize both reputational and financial harm to ATK, by interfering with the negotiations between ATK and Haddad Brands to launch an exclusive line of children's apparel co-branded under the ASAHD and JORDAN brands." Id.

33.    Describing Business Moves' conduct as "parasitic" and in "bad-faith," the Underlying Action contends that Business Moves has acted intentionally to violate Underlying Plaintiffs' rights.

34.    Underlying Plaintiffs assert that Business Moves' attempts to trademark both DJ Khaled's and Asahd's names, and its improper use of their names through hashtags and T-shirts was done with the full knowledge of the fact that such activity violates their "exclusive rights in the WE THE BEST mark and ASAHD name and mark." See Exhibit E, ¶ 52. Such conduct is alleged to have been intentionally fraudulent, malicious, willful and wanton. See id. at ¶60.

35.    Underlying Plaintiffs have further asserted that Business Moves attempted to interfere with ATK's business relationship by making "knowingly false claims about their

purported ownership of the ASAHD brand and [Underlying Plaintiffs'] purported lack of rights in the ASAHD mark." See Exhibit E, ¶54.

36.    The Underlying Action asserts the following causes of action:

(1)    **Violation of the New York Right of Privacy (N.Y. Civ. Rights Law §50-51),** alleging that Business Moves' use of the name Asahd without consent violates ATK's rights under the law;

(2)    **Violation of the New York Right of Privacy (N.Y. Civ. Rights Law §50-51),** alleging that Business Moves' use of the names Khaled and DJ Khaled without consent violates DJ Khaled's rights under the law;

(3)    **Federal Trademark Infringement (15 U.S.C. §1114(1)),** alleging that Business Moves' use of the WE THE BEST LIFESTYLE mark was a willful and intentional violation of federal trademark infringement law;

(4)    **Federal Unfair Competition** (15 U.S.C. §1125(a)), alleging that Business Moves' use of  the WE THE BEST LIFESTYLE mark was a willful and intentional violation of federal unfair competition law;

(5)    **Unfair Competition Under New York Common Law,** alleging that Business Moves' use of WE THE BEST LIFESTYLE, ASAHD, KHALED and DJ KHALED is likely to confuse the public in violation of New York law;

(6)    **Violation of the New York Deceptive and Unfair Trade Practices Act (N.Y. Gen. Bus. Law §349),** alleging that Business Moves' use of WE THE BEST LIFESTYLE, ASAHD, KHALED and DJ KHALED is a willful and knowing disregard of Plaintiff's rights in violation of New York law;

(7)    **Commercial Defamation,** alleging that Business Moves' false statements regarding ATK were made with knowledge that they were false and with reckless disregard of their falsity; and

(8)    **Declaratory Judgment of Non-Infringement,** seeking a declaration that Underlying Plaintiffs' use of the names and marks does not violate any rights held by Business Moves.

37.    Underlying Plaintiffs seek injunctive relief enjoining Business Moves from using WE THE BEST, or WE THE BEST LIFESTYLE, KHALED, DJ KHALED, ASAHD and derivative names and phrases from ASAHD, as well as compensatory damages,

exemplary/punitive damages, interest, disgorgement of profits, costs and attorneys' fees. <u>See</u> Exhibit E.

38.     On June 25, 2018, Hiscox delivered a letter to Business Moves disclaiming coverage under the PL Policy and agreeing to provide a defense pursuant to an express reservation of rights under the CGL Policy. <u>See</u> Exhibit F.

39.     On July 20, 2018, Hiscox, through its counsel, delivered a letter to Business Moves providing a further reservation of rights letter and advising that all of the asserted claims appear to be outside the Policies' coverage. That letter further advised that Hiscox would agree to continue to defend Business Moves under the CGL Policy until a declination was issued or a court orders there is no coverage. The July 20, 2018 letter expressly reserved the right to recoup payments made under its duty to defend, should a court determine there is no coverage under the Policies. <u>See</u> Exhibit G.

**CLAIM FOR RELIEF**

<u>**First Claim for Declaratory Judgment:**</u>

**Coverage A of the CGL Policy Does Not Afford Coverage to Business Moves for the Underlying Action, and Therefore Hiscox Owes No Duty to Defend or Indemnify**

40.     Hiscox adopts and incorporates herein by reference the allegations in all proceeding paragraphs as if fully repeated herein.

41.     The Underlying Action filed against Business Moves seeks only to recover economic loss and/or injunctive relief to prevent further economic loss. <u>See</u> Exhibit B.

42.     There are no allegations in the Underlying Action of any "bodily injury" or "property damage" as those terms are defined by the CGL Policy.

43.     Moreover, there are no allegations in the Underlying Action of an "occurrence," as

that term is defined by the CGL Policy, as intentional conduct is not an accident.

44.     As a result, there is no coverage for the Underlying Action under Coverage A of the CGL Policy, as the insuring agreement is not satisfied.

45.     Even if the allegations in the Underlying Action satisfied the insuring agreement, which they do not, Underlying Plaintiffs seek to recover solely for intentional conduct which is precluded from coverage under Coverage A by the application of Exclusion A, "Expected Or Intended Injury."

46.     Even if the allegations in the Underlying Action satisfied the insuring agreement, which they do not, Underlying Plaintiffs seek to recover for "personal and advertising injury," which is precluded from coverage under Coverage A by the application of Exclusion O, "Personal And Advertising Injury."

47.     Accordingly, Hiscox seeks a declaration that it owes no duty to defend or indemnify Business Moves for the Underlying Action under Coverage A of the CGL Policy.

<u>**Second Claim for Declaratory Judgment:**</u>

**Coverage B of the CGL Policy Does Not Afford Coverage to Business Moves for the Underlying Action, and Therefore Hiscox Owes No Duty to Defend or Indemnify**

48.     Hiscox adopts and incorporates herein by reference the allegations in all proceeding paragraphs as if fully repeated herein.

49.     The Underlying Action exclusively alleges that Business Moves acted intentionally to violate DJ Khaled's and ATK's rights. Accordingly, this matter is entirely precluded from coverage under Coverage B of the CGL Policy by the application of Exclusion A, "Knowing Violation Of Rights Of Another."

50.     The Underlying Action exclusively alleges that Business Moves acted intentionally

to publish false material in violation of DJ Khaled's and ATK's rights. Accordingly, this matter is entirely precluded from coverage under Coverage B of the CGL Policy by the application of Exclusion B, "Material Published With Knowledge of Falsity."

### Third Claim for Declaratory Judgment:

**Certain Other Exclusions in Coverage B of the CGL Policy Apply, In Part, to Preclude Any Duty to Defend or Indemnify Business Moves for the Underlying Action**

51.     Hiscox adopts and incorporates herein by reference the allegations in all proceeding paragraphs as if fully repeated herein.

52.     Counts 1 and 2 of the Underlying Action allege that Business Moves is guilty of a criminal misdemeanor under New York Civil Rights Law. Accordingly those counts are precluded from coverage under Coverage B of the CGL Policy by the application of Exclusion D, "Criminal Acts."

53.     The Underlying Action alleges that Business Moves is liable, in part, for trademark infringement. Trademark infringement is not included in the definition of "personal and advertising injury," and is therefore not within the insuring agreement of Coverage B of the CGL Policy.

54.     Moreover, even if trademark infringement were insured under Coverage B, all such allegations are precluded from coverage under Coverage B of the CGL Policy by the application of Exclusion I, "Infringement Of Copyright, Patent, Trademark Or Trade Secret."

55.     The Underlying Action alleges that Business Moves is liable, in part, for the unauthorized use of certain names and products in e-mail, domain names and metatags. Accordingly, these allegations are precluded from coverage under Coverage B of the CGL Policy by the application of Exclusion L, "Unauthorized Use of Another's Name or Product."

**Fourth Claim for Declaratory Judgment:**

**The Definitions and Exclusions found in the PL Policy Apply to
Preclude Any Duty to Defend or Indemnify Business Moves for the Underlying Action**

56.     Hiscox adopts and incorporates herein by reference the allegations in all proceeding paragraphs as if fully repeated herein.

57.     The Underlying Action alleges that Business Moves is liable for intentional acts, dishonesty through its use of the term "deceptive," criminal conduct, and knowingly and intentional acts. Accordingly, these allegations are precluded from coverage by the application of Exclusion A of the PL Policy.

58.     The Underlying Action alleges that Business Moves made profits and gained advantages through the use of trademarks to which they were not entitled. Accordingly, these allegations are precluded from coverage by the application of Exclusion B of the PL Policy.

59.     To the extent that the Underlying Action seeks damages for bodily injury or property damage, these allegations would be precluded from coverage by the application of Exclusion K of the PL Policy.

60.     The Underlying Action's primary assertion is that, through the acquisition of trademarks to which Business Moves is not entitled, and the threat of litigation against those who do not honor that trademark, which infringes upon Underlying Plaintiffs' trademarks, Business Moves has committed the above-referenced violations of federal and New York law. These allegations would be precluded from coverage by the application of Exclusion M of the PL Policy.

61.     The Underlying Action's assertion states that Business Moves falsely represents in its advertisements of its products featuring the disputed trademarks, either openly or by implication that it has the trademark rights which Underlying Plaintiffs state they do not, and further, that

Business Moves does so knowing it has no rights in those trademarks. These allegations would be precluded from coverage by the application of Exclusion N of the PL Policy.

62.     The Underlying Action's assertion states that Business Moves is liable for multiple damages for violations of New York law. These allegations would be precluded from coverage by the application of the Damages definitions, Part E of Definitions in the PL Policy.

63.     The Underlying Action's assertion states that Business Moves is liable for illegally obtaining trademarks rightfully belonging to Underlying Plaintiffs; for falsely implying that it has trademark rights it does not; that it slanders Underlying Plaintiffs' own trademark rights to others, such as Haddad Brands; and that in doing so, Business Moves violates New York privacy and civil rights laws, federal law on trademark infringement, and defames Underlying Plaintiffs commercially. These allegations would be precluded from coverage by the application of the Professional Services definition found in Endorsement DPL E5018 CW (08/15) of the PL Policy, as none of these alleged "wrongful acts" fall within the definition of covered Professional Services.

64.     The Underlying Action's assertion states that Business Moves violated the civil, privacy, commercial and trademark rights of the Underlying Plaintiffs in the connection of the sale of goods and products featuring the disputed trademark language. These allegations would be precluded from coverage, even if Business Moves' actions were Professional Services under the definition found in Endorsement DPL E5018 CW (08/15), in that the PL Policy excludes claims based upon the performance or failure to perform professional services in connection with Your Sale of any goods or products.

## PRAYER FOR RELIEF

**WHEREFORE,** Hiscox Insurance Company, Inc. prays for relief as follows:

1.    A judicial declaration that there is no coverage for the Underlying Action under Coverage A of the CGL Policy, and therefore Hiscox does not owe any duty to defend or indemnify Business Moves;

2.    A judicial declaration that there is no coverage for the Underlying Action under Coverage B of the CGL Policy, and therefore Hiscox does not owe any duty to defend or indemnify Business Moves;

3.    A judicial declaration that certain exclusions applicable to Coverage B apply, at least in part, to preclude coverage for the Underlying Action, and therefore Hiscox does not owe any duty to indemnify Business Moves under the CGL policy;

4.    A judicial declaration that because of the definitions and exclusions applicable to the PL Policy, Hiscox does not owe any duty to indemnify Business Moves under the PL Policy; and

5.    An Order awarding Hiscox such additional relief as in law or equity may be appropriate, including recoupment of costs of defense incurred by Hiscox to date in Business Moves' defense against the Underlying Action.

Dated:      New York, New York                    Respectfully submitted,
            November 2, 2018

                                                  COZEN O'CONNOR

                                        By:       _Laura B. Dowgin_____
                                                  Laura B. Dowgin
                                                  COZEN O'CONNOR
                                                  45 Broadway Atrium, 16th Floor
                                                  New York, New York 10006

Tel: (212)-453-3775
Fax: (646)-461-2087
Email: LDowgin@cozen.com
*Attorneys for Plaintiff*

38941962v1