# EXHIBIT A

Craig S. Mende
David A. Donahue
Sean F. Harb
FROSS ZELNICK LEHRMAN & ZISSU, P.C.
4 Times Square, 17th Floor
New York, New York 10036
Tel:  (212) 813-5900
Fax:  (212) 813-5901
*Email: cmende@fzlz.com*
          *ddonahue@fzlz.com*
          *sharb@fzlz.com*

*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KHALED M. KHALED and ATK ENTERTAINMENT, INC., | ECF CASE |
| *Plaintiffs*, | Docket No. _____ |
| v. | |
| CURTIS BORDENAVE and BUSINESS MOVES CONSULTING INC. DBA BUSINESS CONSULTING, | **COMPLAINT** |
| *Defendants*. | |

  Plaintiffs Khaled M. Khaled ("Khaled") and ATK Entertainment, Inc. ("ATK"), by their

undersigned attorneys, Fross Zelnick Lehrman & Zissu, P.C., for their Complaint against

Defendants, allege as follows:

## NATURE OF THE ACTION

  1.  Plaintiffs bring this action to halt the brazen attempt by trademark pirates,

Defendants Curtis Bordenave and his company Business Moves Consulting Inc. dba Business

Moves, to usurp and trade on the names and trademarks of world-famous entertainer Khaled M. Khaled, known popularly as "DJ Khaled," and his eighteen-month-old son, Asahd Tuck Khaled.

2.     Plaintiff Khaled has enjoyed tremendous success in the United States and beyond as an entertainer, record producer, radio personality, recording label executive, and media celebrity.  Consumers and the public have come to associate him not only with his "DJ Khaled" performing name, but also with his catch phrase WE THE BEST, for which Khaled owns four federal trademark registrations covering a wide array of goods and services.  Plaintiff ATK is a corporation set up to conduct affairs for Khaled's son, Asahd Tuck Khaled, who became instantly famous in his own right upon his birth in October 2016.

3.     Defendants' main business appears to be appropriating and exploiting the renown and goodwill associated with well-known brands and personalities – and, worse still, the names of famous personalities' children.   In this case, Defendants have intentionally targeted Khaled and his son by using and applying to register the trademarks ASAHD, ASAHD COUTURE, A.S.A.H.D A SON AND HIS DAD, and WE THE BEST LIFESTYLE in connection with purported clothing and magazine publishing businesses, and by using Plaintiff Khaled's name and performing name as hashtags to direct internet traffic to Defendants' products.  Tellingly, Defendants have used the distinctive spelling of "Asahd" that Khaled and Asahd's mother chose for their son.

4.     Moreover, Defendants have repeatedly defamed ATK, falsely attacking its reputation and seeking to harm its business through (i) a barrage of communications directed to Haddad Brands, the New York-based licensing agent for children's clothing under the iconic JORDAN brand connected with basketball star Michael Jordan, and (ii) defamatory posts on social media sites such as Instagram and defamatory statements to various media outlets.

Defendants have intentionally timed their attacks to try to maximize both reputational and financial harm to ATK, by interfering with the negotiations between ATK and Haddad Brands to launch an exclusive line of children's apparel co-branded under the ASAHD and JORDAN brands.

5.       To put a stop to Defendants' parasitic conduct and bad-faith acts, Plaintiffs bring this action on the following grounds:  (i) violation of Khaled's and Asahd Tuck Khaled's right of publicity under New York Civ. Rights L. § 50; (ii) infringement of a federally registered trademark and unfair competition in violation of Sections 32(1) and 43(a) of the U.S. Trademark (Lanham) Act of 1946, as amended, 15 U.S.C. §§ 1114(1) and 1125(a); (iii) common law unfair competition and trademark infringement arising under the laws of the State of New York; and (iv) commercial defamation under New York State law.  Plaintiffs seek injunctive relief, damages, both actual and exemplary as authorized by N.Y. Civ. Rights L. § 51, three times Defendants' profits or plaintiff's damages (whichever is greater) and an award of attorney's fees, all as authorized by Section 35 of the Lanham Act, 15 U.S.C. § 1117, and such other relief as the Court deems just and proper.

6.       To remove the cloud over its impending collaboration with the JORDAN brand, Plaintiff ATK also seeks a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, that (i) its use of ASAHD, ASAHD KHALED, and ASAHD TUCK KHALED names and marks, including without limitation in connection with the JORDAN brand, does not infringe any rights the Defendants purport to have in ASAHD or similar marks, (ii) Plaintiff ATK has not engaged in any acts of unfair competition with Defendants; and (iii) Plaintiff ATK has not violated any other purported rights of Defendants.

## THE PARTIES

7.      Plaintiff Khaled M. Khaled is a resident of the State of Florida residing in Miami-Dade County, Florida.

8.      ATK Entertainment, Inc. is a corporation duly organized and existing under the laws of the State of Florida, with a place of business in Miami-Dade County, Florida.

9.      Upon information and belief, defendant Curtis Bordenave is a resident of Texas residing at 17927 Windflower Way, Dallas, TX 75252, and is the founder and principal of and controls the activities of defendant Business Moves Consulting Inc. dba Business Moves ("Business Moves").

10.     Upon information and belief, defendant Business Moves is a corporation existing under the laws of Mississippi with a place of business at 17927 Windflower Way, Dallas, TX 75252.

## JURISDICTION & VENUE

11.     This action arises under N.Y. Civ. Rights L. § 50, the Trademark Act of 1946, as amended (the "Lanham Act"), 15 U.S.C. § 1051 *et seq.*, the Declaratory Judgments Act, 28 U.S.C. § 2201, and applicable state and common law.

12.     The Court has original jurisdiction over the subject matter of the Lanham Act claims asserted in this action pursuant to Section 39 of the Lanham Act, 15 U.S.C. § 1121, and under Sections 1331 and 1338(a) and (b) of the Judicial Code, 28 U.S.C. §§1331, 1338(a) & (b). The Court has supplemental jurisdiction over the state unfair competition and related claims under Section 1367(a) of the Judicial Code, 28 U.S.C. § 1367(a).  The Court has diversity and supplemental jurisdiction over the N.Y. Civ. Rights L. § 50 claim and commercial defamation claim under Sections 1332 and 1367(a) of the Judicial Code, 28 U.S.C. §§ 1332(a) & 1367(a).

This Court has jurisdiction under 28 U.S.C. § 2201 to declare the rights of any party seeking a declaration.

13.    Upon information and belief, Defendants regularly do and solicit business within the State of New York; have engaged in conduct outside this state causing injury within this judicial district and state, including without limitation their dissemination of defamatory statements about Plaintiff ATK to one or more New York corporations, have engaged in conduct, including, but not limited to, the marketing, promotion, advertising and sale of products, in this judicial district, causing injury within this district and within the State; have derived substantial revenues from services advertised, promoted, marketed, sold and/or offered for sale within this district and State; and have and should have reasonably expected their acts, including, but not limited to, the marketing, promotion, advertising, sale and/or offering for sale of services in violation of Plaintiff's rights and the making of defamatory statements in violation of Plaintiff ATK's rights under New York law to have consequences within this district and within the State, including, but not limited to, the harm suffered by Plaintiffs complained of herein.

14.    Venue is proper pursuant to Sections 1391(b) and (c) of the Judicial Code, 28 U.S.C. § 1391(b) and (c), in that a substantial part of the events giving rise to the claim, including, but not limited to, Defendant's marketing, promotion, advertising, sale and offering for sale of products in violation of Plaintiffs' rights under New York law and their dissemination of defamatory statements about Plaintiff ATK to one or more New York corporations, occurred in this District and in that Defendant is subject to personal jurisdiction in the State and are therefore deemed to reside in the State.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

A.  **Khaled and His DJ KHALED and WE THE BEST Trademarks**

15.     Khaled is one of the best-known producers and performers in the hip hop music industry today.  Many of his recordings have garnered Gold and Platinum status with the Recording Industry Association of America and have won numerous industry awards, including, for example, American Music Awards, ASCAP Awards, and BET Hip Hop Awards.

*Khaled's Registered DJ KHALED Mark*

16.     For many years, Khaled has offered various entertainment- and music-related products and services under the performing name and mark DJ KHALED.

17.     Khaled owns U.S. Trademark Registration Number 5,085,344 for the mark DJ KHALED covering the following goods and services:

> Musical sound recordings; Musical video recordings; Disc jockey services; Entertainment services in the nature of live disc jockey and rap artist personality performances; Arranging, organizing, conducting, and hosting social entertainment events; Master of ceremonies for parties, live musical entertainment performances, and special entertainment and social events; Arranging, organizing and conducting and hosting night club parties; Hosting special entertainment and social events for others.

18.     Khaled's foregoing registration is valid, subsisting, and in full force and effect and serves as *prima facie* evidence of Khaled's ownership and exclusive right to use the DJ KHALED mark for the products and services identified.

*Khaled's Registered WE THE BEST Mark*

19.     *We The Best* is the name of Khaled's second studio record album, released in 2007, and is the title to the first track on the album.

20.     Following the release of his *We The Best* album, Khaled began repeating the phrase "We the Best" in musical recordings, interweaving the spoken words amidst other lyrics

and music.  He also began shouting the phrase "We the Best" from the stage at his live

performances. As a result of this frequent use of the phrase "We the Best," Khaled's fans grew to

associate "We the Best" with him.  In a short period of time, Khaled's live performance

attendees and fans came to expect Khaled to use and shout out "We the Best" as his signature

phrase.

21.     In or around 2010, Khaled founded the WE THE BEST MUSIC GROUP as a

recording label, first as an imprint of The Island Def Jam Music Group, then as an imprint of

Universal Records' Cash Money Records division.  In or around April 2016, the WE THE BEST

MUSIC label moved to Epic Records, the major record label owned by Sony Music

Entertainment.

22.     WE THE BEST MUSIC is not only a recording label, but also the name of

Khaled's management company, music publishing company, music production company, and

flagship recording studio.

23.     In or around 2015, Khaled's social media presence gained enormous attention,

including on the Snapchat and Instagram sites, where he posted videos and photos of his

everyday life scenes and events. Such social media posts, which also include inspirational

messages and uplifting comments, gained some two million followers in a short period of time.

Followers of his Instagram posts now number over nine million.  He has made more than twenty-

five thousand Instagram account posts, and his posts and usually receive tens of thousands of

views and likes.  On Snapchat, Khaled garners three to four million views on each of his Snaps.

He has almost four million followers on Twitter.

24.     Most of Khaled's aforementioned social media posts include the tag

"wethebestmusic" or #wethebest, by which Khaled's followers identify the posts as originating

with Khaled. WE THE BEST and Khaled are thus one and the same in the minds of his

followers, fans, and the consuming public.

25.     In December 2015, Khaled launched his online retail webstore

WETHEBESTSTORE.COM, to sell his expanding line of merchandise. The launch of this site

was reported in the *Inquisitr* online publication on December 13, 2015, which characterized

Khaled's WE THE BEST name as "his ubiquitous phrase."

26.     Khaled has also partnered with many well-known companies for cross-branded

WE THE BEST products and services.  For example, in February 2016, Khaled signed with

Apple Music, and launched his WE THE BEST RADIO program on the Beats 1 internet music

radio station.

27.     Khaled and his WE THE BEST mark have been the subject of and featured in

numerous articles in mass media publications, both online and hard copy, including, but not

limited to, *Forbes* (November 7, 2014 article titled "How Many Times Can DJ Khaled Say 'We

The Best' in 40 Seconds?"), *The New York Times*, *GQ Magazine*, *Billboard*, and *Time Magazine*.

28.     Khaled has appeared on such network television programs as *The Ellen Show*,

*Jimmy Kimmel Live*, *Live With Kelly and Ryan*, *The Chew*, *Rachael Ray*, *The Daily Show*, *The

Late Show With Stephen Colbert*, *Late Night With Seth Meyers*, and *Good Morning America*.

Khaled's WE THE BEST mark has been prominently featured and publicized in these

appearances.

29.     As a result of the acclaim garnered by his performance, recording and other

entertainment-related services, his enormous social media presence, and the popularity and

widespread acceptance of his inspirational sayings, among other things, Khaled's phrase WE

THE BEST, which appears and is used widely in all of the aforementioned media, has become

well known across diverse consumer populations.

30.     In addition to his strong common-law rights in the WE THE BEST trademark

built up through use, Khaled owns U.S. Trademark Registration Numbers 4,198,000, 5,031,701,

5,032,062, and 5,341,520 for the WE THE BEST trademark, covering the following goods and

services:

- Registration Number 4,198,000 covers musical recordings, live musical

  performance, music production, record production;

- Registration Number 5,031,701 covers headphones, recordings, clothing, disc

  jockey services; music video production; various entertainment services; music

  production services;

- Registration Number 5,032,062 covers his online retail clothing store services and

  his internet radio program; and

- Registration 5,341,520 covers e-cigarette liquid.

31.     Khaled's registrations for his WE THE BEST mark are valid, subsisting, and in

full force and effect and serve as *prima facie* evidence of Khaled's ownership and exclusive right

to use the mark for Khaled's products and services.  In addition, Registration Number 4,198,000

is incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065, and therefore constitutes

conclusive evidence of Khaled's exclusive right to the mark in commerce on or in connection

with the services stated in the registration, as provided by Section 33(b) of the Lanham Act, 15

U.S.C. § 1115(b).

**B.    Asahd Tuck Khaled and ATK**

32.    Plaintiff Khaled and Nicole Tuck welcomed their son Asahd Tuck Khaled to the world on October 23, 2016.  As a result of his father's widespread fame, Asahd, too, became instantly famous, with numerous media outlets reporting his birth.

33.    "Asahd" is a non-traditional spelling of the name "Assad."

34.    Like his father, Asahd has become a social media phenomenon.  His parents obtained the ASAHDKHALED Instagram account for him in January 2017 under the "Asahd Tuck Khaled" user name.  The account was an instant success and now has over 1.8 million followers.  His @AsahdKhaled Twitter Account has more than 47,000 followers.  Asahd has been featured in major publications such as *The New York Times*, *People*, *Time* ("18 Reasons DJ Khaled's Son Asahd Is Already Having a Better Summer Than You"), and *Cosmopolitan* ("Asahd Khaled Was the Best Baby of 2017"), and was the subject of the cover article for *Paper* Magazine's December 2017 issue.

35.    Asahd's immediate rise to fame created numerous opportunities for him.  To protect his interests, his parents formed Plaintiff ATK, which is run separately from their own business affairs.

36.    ATK holds the exclusive right to Asahd's right of publicity, including the right to license his name, portrait and likeness for commerce or trade.

37.    Among the business opportunities presented to ATK on Asahd's behalf is a highly coveted apparel deal with Nike's iconic JORDAN brand associated with NBA Hall-of-Fame basketball player Michael Jordan.  For several months, ATK negotiated a deal with Haddad Brands, the exclusive licensing agent for children's clothing under the JORDAN brand, eventually culminating in an agreement.  The collaboration with the JORDAN brand was

announced in February 2018 and received considerable press attention from media outlets such as *Ebony* magazine, *BET* network, *TMZ.com*, and *Hollywood Unlocked* ("One-Year-Old Asahd Khaled Hits Fashion Runway & Inks Deal With Jordan Brand"). The first pieces of the collection have been released for sale at retail outlets such as Kids Foot Locker.

38. On April 4, 2018, ATK applied to register the marks ASAHD, ASAHD KHALED and ASAHD TUCK KHALED. *See* U.S. Application Serial Nos. 87/862,446, 87/862,459, and 87862453.

## B. Defendants and Their Wrongful Activities

39. Defendants Curtis Bordenave and Business Moves appear to be in the business of appropriating names or trademarks popularized by others and attempting to assert trademark rights over them – either for the purpose of unfairly capitalizing on the goodwill associated with the names and trademarks through the sale of t-shirts bearing them, or for the purpose of extracting a large payment from the targets of Defendants' predatory conduct. For example, among many other trademark filings, Defendants have applied to register the following as trademarks:

- CARDI B – U.S. Application Serial Number 87/621,947: "Cardi B" is the performing name of Belcalis Almanzar, a well-known rapper and television personality. Upon information and belief, Ms. Almanzar did not authorize Defendants to use or register this mark.

- STORMI COUTURE – U.S. Application Serial Number 87/816,331: "Stormi" is the name of the daughter of actress and model Kylie Jenner, Stormi Webster. Defendant Business Moves applied to register STORMI COUTURE within a month after Ms.

Webster was born. Upon information and belief, Business Moves was not authorized by Stormi's parents to use or register this mark.

- CYNTHIA BAILEY EYEWEAR – U.S. Application Serial Number 87/275,681: Cynthia Bailey is a model and reality television personality who sells eyewear at www.cynthiabaileyeyewear.com. Upon information and belief, Ms. Bailey did not authorize Defendants to use or register this mark.

- CAPITAL CITY GO GO – U.S. Application Serial Number 87/712,688: The Capital City Go-Go is an American professional basketball team in the NBA G League and an affiliate of the Washington Wizards of the National Basketball Association. Upon information and belief, these teams' owners did not authorize Defendants to use or register this mark.

- LAS VEGAS ACES – U.S. Application Serial Number 87/716,727: The Las Vegas Aces are a professional basketball team based in Paradise, Nevada, playing in the Western Conference in the Women's National Basketball Association. Upon information, neither the team's owners nor the WNBA authorized Defendants to use or register this mark.

- CELEBRITY BOXING – U.S. Application Serial Number 87/291,450: Celebrity Boxing was a FOX television show in which celebrities whose careers and/or notoriety had diminished were pitted against each other in exhibition boxing matches. Upon information and belief, neither the producers nor the owners of FOX authorized Defendants to use or register this mark.

- Z 100 – U.S. Registration Number 5,306,012: Defendants have applied to register several popular radio station names and call numbers for use in connection with clothing,

including this one.  Upon information and belief, the owners of the radio station did not authorize Defendants to use or register this mark.

- SIRIUS – U.S. Registration Number 5,321,677:  Defendants have registered the popular satellite radio station name for use in connection with clothing.  Upon information and belief, the satellite broadcaster did not authorize Defendants to use or register this mark.

***Defendants' Misappropriation of ASAHD, WE THE BEST and Related Marks***

40.     Soon after Asahd Tuck Khaled's birth, Defendants set their sights on Plaintiff Khaled and his family.  In July 2017, when Asahd was less than one year old, Defendants filed U.S. Application Serial Number 87/529,960 for ASAHD in connection with various clothing items and U.S. Application Serial Number 87/529,865 for ASAHD COUTURE in connection with a variety of fragrance, skincare, and haircare products.

41.     The United States Patent and Trademark Office ("USPTO") has issued Office Actions rejecting registration of Defendants' U.S. Application Serial Number 87/529,960 for ASAHD on the grounds, among others, that it falsely implies a connection with Asahd Tuck Khaled and seeks registration of his name without permission in violation of Sections 2(a) and 2(c) of the Lanham Act, 15 U.S.C. §§ 1052(a), (c).  The USPTO explained that "Asahd Khaled is so well known that the public would reasonably assume a connection between the named person and the recited goods. Especially in the instant case where the named person is very well known for his clothing line and the recited items are all clothing items."

42.     Within ten days after filing their first wave of ASAHD applications, Defendants filed Application Serial Number 87/541,379 for WE THE BEST LIFESTYLE based on an alleged intent to use the mark for magazine publishing services.

43.     Shortly after the collaboration with the JORDAN brand was announced,
Defendants filed two additional applications intended to invoke ASAHD – Application Serial
Number 87/798,432 for ASAHD COUTURE (amended subsequently to A.S.A.H.D.
COUTURE) in connection with footwear and other clothing items; and Application Serial
Number 87/867,012 for A.S.A.H.D. A SON AND HIS DAD (and design) for various clothing
items and other products and services.

44.     Defendants claim to be offering clothing featuring the ASAHD trademark.  For
example, their Instagram account shows the following t-shirt:



45.     In an attempt to confuse consumers into believing that there is a connection
between Plaintiffs and Defendants' ASAHD clothing and other products and services,
Defendants have used the WE THE BEST LIFESTYLE and ASAHD trademarks, Plaintiff
Khaled's name and performing name, and various other trademarks and terms associated with
Plaintiffs, as Instagram account names and as links and hashtags in Defendants' Instagram posts.
For example, Defendants' Instagram post for the ASAHD t-shirt shown above includes the
following Instagram account names, links, and hashtags, among others:  @weareasahd,
@asahd_couture, #AsahdCouture, #AsahdBrand, #weareasahd, #khaled, #djkhaled,
#fatherofasahd, and #wethebestlifestyle.

46. In various Instagram posts, Defendants have indicated that they have launched or intend to launch their ASAHD brand in New York City, among other major cities.

47. Defendants have not obtained written consent from Plaintiffs or any representative of the Plaintiffs to use the ASAHD name and mark and the WE THE BEST LIFESTYLE mark.

48. The goods and services Defendants offer under the ASAHD name and mark and the WE THE BEST LIFESTYLE mark are not provided or approved by Plaintiffs or anyone with authorization from Plaintiffs to engage in such activity.

49. Defendants' use of WE THE BEST LIFESTYLE began long after Plaintiff Khaled first began using his WE THE BEST mark for a wide variety of products and services and long after the mark became exclusively associated with Plaintiff Khaled.

50. Defendants' use of ASAHD began only after Asahd Tuck Khaled was born and became famous.

51. Defendants target consumers who are familiar with and who are customers of Plaintiffs' goods and services.

52. Defendants are aware of Plaintiffs' exclusive rights in the WE THE BEST mark and ASAHD name and mark, and are aware that use by Defendants of these names and marks violates Plaintiffs' rights.

53. Notwithstanding the fact that the Defendants have been on actual notice of Plaintiffs' rights, Defendants have continued to utilize the WE THE BEST mark and ASAHD name and mark.

*Defendants' Defamatory and Knowingly False Statements About ATK*

54.     Defendants have attempted to interfere with ATK's business relationship with

Haddad Brands concerning the JORDAN brand by making knowingly false claims about their

purported ownership of the ASAHD brand and Plaintiffs' purported lack of rights in the ASAHD

mark.

55.     For example, on February 16, 2018, Defendant Bordenave wrote to Haddad

Brands on behalf of Defendant Business Moves, and threatened as follows:

> Please stop all use of the trademark Asahd.  Asahd is a trademark of Business
> Moves.  See USPTO trademarks serial numbers. 87529960. , [sic] 87529865 and
> 87798432. It has been brought to our attention that you are working on a brand
> collaboration between Jordan Brand and Asahd Mark.  The use by Jordan Brand could
> cause damage to our brand.

56.     Mr. Bordenave followed up with additional communications to Haddad Brands, in

which he stated that Defendants owned the ASAHD brand and that it would be a "big problem"

if Haddad Brands were to forward with launching its collection of co-branded ASAHD and

JORDAN clothing.

57.     Defendants have also falsely stated to various media outlets that Defendants, not

Plaintiffs, are the true owners of the ASAHD brand, and that Plaintiffs have no right to move

forward with the collection.

**C.     Effect of Defendants' Conduct**

58.     Defendants' unauthorized use of the WE THE BEST LIFESTYLE mark and

ASAHD name and mark for commercial purposes is damaging Plaintiffs.

59.     Furthermore, Defendants' use of the WE THE BEST LIFESTYLE mark, the DJ

KHALED name and mark, and the ASAHD name and mark (i) is likely to falsely suggest an

association with or approval by Plaintiffs of Defendants' products and services, (ii) is likely to

continue to create confusion, as consumers will assume that Defendants' products and services

are authorized by, endorsed by, associated with, or are otherwise connected with those of Plaintiffs.

60.     Defendants' use of the WE THE BEST LIFESTYLE mark, the DJ KHALED name and mark, and the ASAHD name and mark is intentionally fraudulent, malicious, willful and wanton.

61.     Defendants' claims to Haddad Brands and various media outlets concerning their purported ownership of the ASAHD brand and Plaintiff ATK's purported lack of rights have harmed Plaintiff ATK's business reputation and are false and defamatory.

62.     Defendants' unauthorized acts as described herein have caused and will continue to cause irreparable damage to Plaintiffs' business and goodwill unless restrained by this Court.

## FIRST CLAIM FOR RELIEF – VIOLATION OF THE
## NEW YORK RIGHT OF PRIVACY (N.Y. Civ. Rights Law §§ 50-51)

63.     Plaintiff ATK repeats and realleges the allegations set forth in paragraphs 1 through 62 above as if fully set forth herein.

64.     Defendants' use of the name Asahd in connection with their products and services constitutes a use within New York State for advertising purposes and for the purposes of trade.

65.     Defendants' use of the Asahd name is without consent.

66.     Defendants' conduct thus violates N.Y. Civ. Rights L. § 50, a violation for which N.Y. Civ. Rights L. § 51 provides Plaintiff ATK with a cause of action for damages and injunctive relief.

67.     Plaintiff ATK has been damaged as a result of Defendants' violation of N.Y. Civ. Rights L. § 50.  Furthermore, Defendants have profited from their violation, which such profits should be accounted for and disgorged.

## SECOND CLAIM FOR RELIEF – VIOLATION OF THE
## NEW YORK RIGHT OF PRIVACY (N.Y. Civ. Rights Law §§ 50-51)

68.     Plaintiff Khaled repeats and realleges the allegations set forth in paragraphs 1 through 67 above as if fully set forth herein.

69.     Defendants' use of the names KHALED and DJ KHALED and the term "fatherofasahd" as hashtags to advertise their products and services constitutes a use within New York State for advertising purposes and for the purposes of trade.

70.     Defendants' use of these names and terms is without consent.

71.     Defendants' conduct thus violates N.Y. Civ. Rights L. § 50, a violation for which N.Y. Civ. Rights L. § 51 provides Plaintiff Khaled with a cause of action for damages and injunctive relief.

72.     Plaintiff Khaled has been damaged as a result of Defendants' violation of N.Y. Civ. Rights L. § 50.  Furthermore, Defendants have profited from their violation, which such profits should be accounted for and disgorged.

## THIRD CLAIM FOR RELIEF -- FEDERAL TRADEMARK
## INFRINGEMENT (15 U.S.C. § 1114(1))

73.     Plaintiff Khaled repeats and realleges the allegations set forth in Paragraphs 1 through 72 as if fully set forth herein.

74.     In light of Plaintiff Khaled's prior rights in the WE THE BEST mark, Defendants' offering, advertising and providing of products and services under the WE THE BEST LIFESTYLE mark is likely to cause confusion, mistake or deception as to the source or sponsorship of Defendants' products and services.

75.     As a result of Defendants' unauthorized use of a mark that wholly incorporates Plaintiff Khaled's federally registered WE THE BEST mark, the public is likely to believe that

Defendants' products and services have been approved by Plaintiff Khaled, and such use falsely represents Defendants as being legitimately connected with and/or authorized by Plaintiff Khaled and places beyond Plaintiff Khaled's control his own reputation and ability to control the use of WE THE BEST or the quality of the products or services bearing that mark.

76.     Defendants' infringement and of Plaintiff Khaled's registered mark is willful, intended to reap the benefit of the goodwill of Plaintiff Khaled, and violates Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

77.     Defendants' aforesaid conduct is causing irreparable injury to Plaintiff Khaled and to his goodwill and reputation, and will continue both to damage Plaintiff Khaled and deceive and threaten harm to the public unless permanently enjoined by this Court.

78.     Plaintiffs have no adequate remedy at law.

### FOURTH CLAIM FOR RELIEF -- FEDERAL UNFAIR COMPETITION (15 U.S.C. § 1125(a))

79.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 78 above as if fully set forth herein.

80.     Defendants' use of WE THE BEST LIFESTYLE for products and services that are related and/or substantially similar to those offered by Plaintiff Khaled under his WE THE BEST mark constitutes a false designation of origin and a false representation as to the origin of Defendants' products and services.

81.     Defendants' use of WE THE BEST LIFESTYLE in connection with their products and services is likely to cause confusion, mistake, or deception as to the source of Defendants' products and services and is likely to create the false impression that those products and services are authorized, sponsored, endorsed, licensed by, or affiliated with Plaintiffs.

82.     Defendants' use of the ASAHD name and mark, the KHALED and DJ KHALED names and marks, and the term "fatherofasahd" as hashtags in connection with the promotion, advertising and sale of their products and services is likely to cause confusion, mistake, or deception as to the source of Defendants' products and services and is likely to create the false impression that those products and services are authorized, sponsored, endorsed, licensed by, or affiliated with Plaintiffs.

83.     Defendants' actions constitute unfair competition in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

84.     Defendants' conduct is willful, intended to reap the benefit of the goodwill of Plaintiffs, and violates Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

85.     Defendants' conduct has caused and is causing irreparable injury to Plaintiffs and will continue both to damage Plaintiffs and deceive the public unless enjoined by this Court.

86.     Plaintiffs have no adequate remedy at law.

**FIFTH CLAIM FOR RELIEF -- UNFAIR
COMPETITION UNDER NEW YORK COMMON LAW**

87.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 86 above as if fully set forth herein.

88.     Defendants' use of WE THE BEST LIFESTYLE, ASAHD, KHALED, and DJ KHALED, and the term "fatherofasahd," in connection with his products and services is likely to confuse the public as to the origin, source or sponsorship of Defendants' products and services, or to cause mistake or to deceive the public into believing that Defendants' products and services are authorized, sponsored, endorsed, licensed by, or affiliated with Plaintiffs, all in violation of Plaintiffs' rights under the common law of the State of New York.

89.     Defendants have been and, unless enjoined by this Court, will continue to be unjustly enriched at Plaintiff's expense.

90.     Defendants' above mentioned activities constitute unfair competition under New York common law.

91.     Defendants conduct has caused and is causing irreparable injury to Plaintiffs will continue to both damage Plaintiffs and deceive the public unless enjoined by this Court.

92.     Plaintiffs have no adequate remedy at law.

**SIXTH CLAIM FOR RELIEF -- VIOLATION
OF THE NEW YORK DECEPTIVE AND UNFAIR
TRADE PRACTICES ACT (N.Y. Gen. Bus. Law § 349)**

93.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 92 above as if fully set forth herein.

94.     By reason of the acts set forth above, Defendants have been and are engaged in deceptive acts or practices in the conduct of a business, trade or commerce in violation of Section 349 of the New York General Business Law.

95.     Defendants' use of WE THE BEST LIFESTYLE, ASAHD, KHALED, and DJ KHALED, and the term "fatherofasahd" in connection with their products and services has the capacity to deceive and is deceiving the public as to the source or sponsorship of Defendants' products and services.  As a result, the public will be damaged.

96.     Defendants' conduct is willful and in knowing disregard of Plaintiffs' rights.

97.     Defendants' conduct constitutes a deceptive trade practice under Section 349 of the General Business Law of the State of New York.

98.     Defendants' conduct has caused and is causing irreparable injury to Plaintiffs and will continue to both damage Plaintiffs and deceive the public unless enjoined by this Court.

99.     Plaintiffs have no adequate remedy at law.

### SEVENTH CLAIM FOR RELIEF – COMMERCIAL DEFAMATION

100.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 99 above as if fully set forth herein.

101.     Defendants have disseminated false statements concerning Plaintiff ATK to various third parties, including Haddad Brands and various media outlets, that are defamatory of the reputation of Plaintiff ATK's business.

102.     Defendants disseminated such statements with knowledge that they were false and with reckless disregard of their falsity.

103.     Defendants' conduct has caused and is causing irreparable injury to Plaintiff ATK and will continue to both damage Plaintiff ATK and deceive the public unless enjoined by this Court.

104.     Plaintiffs have no adequate remedy at law.

### EIGHTH CLAIM FOR RELIEF – CLAIM FOR
### DECLARATORY JUDGMENT OF NON-INFRINGEMENT

105.     Plaintiff ATK repeats and realleges the allegations set forth in paragraphs 1 through 104 above as if fully set forth herein.

106.     Defendants have claimed that Plaintiff ATK's use and registration of the ASAHD mark is likely to cause confusion with Defendants' purported ASAHD mark.  Because of Defendants' actions and demands described herein, there is a substantial controversy between the parties, who have adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

107.     Plaintiff ATK's use of the ASAHD, ASAHD KHALED, and ASAHD TUCK KHALED names and marks in connection with clothing, including in collaboration with Nike

Inc.'s JORDAN brand, does not violate any rights of Defendants, including any rights under Sections 32 or 43 of the Lanham Act, 15 U.S.C. § 1114, 1125(a), or any state infringement or unfair competition laws.

108.     Plaintiff ATK is entitled to a declaration that its use of the ASAHD, ASAHD KHALED, and ASAHD TUCK KHALED names and marks, and any registrations for such marks, in connection with clothing products is not likely to create confusion in the marketplace with and mark owned by Defendants, and that Plaintiff ATK has not violated Sections 32(1) or 43(a) of the Lanham Act, 15 U.S.C. § 1114(a), 1125(a), or applicable state law, nor engaged in any acts that would constitute unfair business practices under applicable law.

WHEREFORE, Plaintiffs respectfully demand judgment as follows:

1.     That a permanent injunction be issued enjoining Defendants, jointly and severally, along with their agents, licensees, distributors, attorneys, servants, employees, affiliates and assigns, and all those persons in concert or participation with any of them from:

a.     imitating, copying, or making unauthorized use of the WE THE BEST mark, or any colorable imitation thereof, including, without limitation, WE THE BEST LIFESTYLE (the "WE THE BEST Marks");

b.     imitating, copying, or making unauthorized use of the KHALED or DJ KHALED names and marks (the "KHALED Marks")

c.     imitating, copying, or making unauthorized use of the ASAHD name and mark, or any colorable imitation thereof, including, without limitation, ASAHD COUTURE, A.S.A.H.D., and A.S.A.H.D. A SON AND HIS DAD (the "ASAHD Marks" and collectively, with the WE THE BEST Marks and KHALED Marks, the "Prohibited Marks");

d.     importing, manufacturing, producing, distributing, circulating, selling,

offering for sale, advertising, promoting or displaying any product or service bearing any simulation, reproduction, counterfeit, copy, or colorable imitation of the Prohibited Marks, or any other indicia associated with Plaintiffs;

        e.     using any simulation, reproduction, counterfeit, copy or colorable imitation of the Prohibited Marks in connection with the importation, promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation or distribution of any product or service in such fashion as to relate or connect, or tend to relate or connect, such product or service in any way to Plaintiffs or to any services sold, manufactured, sponsored or approved by or connected with Plaintiffs;

        f.     using any false designation of origin or false description or statement, or performing any act which is likely to lead members of the trade or public to believe that any product or service manufactured, offered, distributed or sold by Defendants is in any manner associated or connected with Plaintiffs, or is sold, manufactured, licensed, sponsored, approved or authorized by Plaintiffs;

        g.     engaging in any other activity constituting unfair competition with Plaintiffs, or constituting an infringement of the Prohibited Marks;

        h.     applying to register or registering in the United States Patent and Trademark Office or in any state trademark registry any mark consisting in whole or in part of the Prohibited Marks or consisting in whole or in part of any simulation, reproduction, copy or colorable imitation of the Prohibited Marks, including without limitation WE THE BEST LIFESTYLE, ASAHD, ASAHD COUTURE, A.S.A.H.D. COUTURE, or A.S.A.H.D. A SON AND HIS DAD.

        i.     registering, asking any third party to register on their behalf, or assisting

any third party in registering or maintaining any domain name, subdomain name, URL, e-mail address, social media account name or handle, or other electronic identifier that includes, in whole or in part, the Prohibited Marks or any formatives thereof (including misspellings);

j. owning, renting, purchasing or otherwise obtaining rights to any internet search term that includes in whole or in part the Prohibited Marks or any formatives thereof (including misspellings) for purposes of directing internet traffic to any web site;

k. using any hashtag that includes, in whole or in part, the Prohibited Marks or any formatives thereof (including misspellings), in any internet post that advertises, promotes, or markets any product or service of Defendants;

l. assisting, aiding or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (k) above.

2. Directing that Defendants deliver up to Plaintiffs' attorneys for destruction all products, labels, signs, stationery, prints, packages, promotional and marketing materials, advertisements and other materials (a) currently in his possession or under their control or (b) recalled by Defendants pursuant to any order of the Court or otherwise, incorporating, featuring or bearing the Prohibited Marks or any other simulation, reproduction, copy or colorable imitation of the Prohibited Marks.

3. Directing such other relief as the Court may deem appropriate to prevent the public from deriving the erroneous impression that any product or service manufactured, imported, advertised, promoted, distributed, displayed, produced, sold or offered for sale by Defendants is in any manner authorized by Plaintiffs or related in any way to Plaintiffs.

4. Directing Defendants to withdraw their U.S. trademark Applications Serial

Numbers 87/541,379 (WE THE BEST LIFESTYLE), 87/798,432 (A.S.A.H.D. COUTURE),

87/867,012 (A.S.A.H.D. A SON AND HIS DAD (and design)), 87/529,960 (ASAHD), and

87/529,865 (ASAHD COUTURE).

     5.      Directing that Defendants file with the Court and serve upon Plaintiffs' counsel

within thirty (30) days after entry of judgment a report in writing under oath, setting forth in

detail the manner and form in which they have complied with the above.

     6.      Awarding Plaintiffs such damages he has sustained or will sustain by reason of

Defendants' violations of N.Y. Civ. Rights L. § 50, including but not limited to all gains, profits,

property and advantages derived by Defendants from his unlawful conduct.

     7.      Awarding to Plaintiffs exemplary damages pursuant to N.Y. Civ. Rights L. §§ 50-

51.

     8.      Awarding Plaintiffs interest, including pre-judgment interest on the foregoing

sums.

     9.      Awarding Plaintiffs such damages they have sustained or will sustain by reason of

Defendants' acts of trademark infringement, and unfair competition and that such sums be

trebled pursuant to 15 U.S.C. § 1117.

     10.      Awarding Plaintiffs all gains, profits, property and advantages derived by

Defendants from their unlawful conduct.

     11.      Awarding to Plaintiffs exemplary and punitive damages to deter any further

violations of their rights as the Court finds appropriate.

     12.      Awarding to Plaintiffs their costs and disbursements incurred in this action,

including reasonable attorneys' fees pursuant to 15 U.S.C. §1117(a).

     13.      Awarding Plaintiffs interest, including pre-judgment interest on the foregoing

sums.

14.     Declaring that Plaintiff ATK, in the promotion and sale of clothing under the ASAHD, ASAHD KHALED, and ASAHD TUCK KHALED names and marks, has not infringed any rights, including any trademark-related rights, of Defendants and that Plaintiff ATK has the lawful right to use the ASAHD, ASAHD KHALED, and ASAHD TUCK KHALED names and marks on or in connection with its products, and to advertise and promote the same, including in collaboration with Nike Inc.'s JORDAN brand;

15.     Declaring that Plaintiff ATK's use of the ASAHD, ASAHD KHALED, and ASAHD TUCK KHALED names and marks for clothing does not constitute trademark infringement or unfair competition in violation of the Lanham Act or under applicable state law or common law, or otherwise constitute unfair business practices under applicable state or common law;

16.     Permanently enjoining Defendants from asserting claims or filing actions against Plaintiff ATK or any business partner of Plaintiff ATK, including, without limitation, Haddad Brands and Nike Inc., arising out of Plaintiff ATK's use of the ASAHD, ASAHD KHALED, and ASAHD TUCK KHALED names and marks in connection with clothing products, objecting to Plaintiff ATK's pending and future applications to register ASAHD, ASAHD KHALED, and ASAHD TUCK KHALED as trademarks, or interfering with any registrations that issue therefrom, or making any threats against Plaintiff ATK for infringement, or interfering in any way with Plaintiff ATK's use or registration of the ASAHD, ASAHD KHALED, and ASAHD TUCK KHALED names and marks in connection with clothing products;

17.     Awarding Plaintiff ATK any and all damages sustained by it as a result of Defendants' threats of legal action, commercial defamation, and any other interference by

Defendants with Plaintiff ATK's business activities;

      18.    Awarding to Plaintiffs such other and further relief as the Court may deem just

and proper.

Dated: New York, New York            Respectfully submitted,
       June 8, 2018

FROSS ZELNICK LEHRMAN & ZISSU, P.C.

By: _____

    Craig S. Mende
    David A. Donahue
    Sean F. Harb
4 Times Square, 17th Floor
New York, New York 10036
(212) 813-5900
*cmende@fzlz.com*
*ddonahue@fzlz.com*
*sharb@fzlz.com*

*Attorneys for Plaintiffs*

# Exhibit A



Hiscox Insurance Company Inc.

**GET THE RIGHT INSURANCE, RIGHT NOW**

# Your Insurance documents

Enclosed you will find the policy documents that make up your insurance contract with us.

Please read through all of these documents. If you have any questions or need to update any of your information please call us at 888-202-3007 (Mon-Fri, 8am-10pm EST).

## Your insurance documents

**Declarations Page**
This contains specific policy information, such as the limits and deductibles you have selected.

**Policy Wording**
This details the terms and conditions of your coverage, subject to policy endorsements.

**Endorsements**
These documents modify the Policy Wording or Declarations Page. These include relevant terms and conditions as required by your state and are part of your policy.

**Notices**
These documents provide information that may affect your coverage such as optional terrorism coverage (if purchased) and other important items required by your state.

**Application Summary**
This is a summary of the information that you provided to us as part of your application. Please review this document and let us know if any of the information is incorrect.

## Reporting a claim

Please inform us immediately if you have a claim or loss to report. Please have your policy number available so we can handle your call quickly.

**Email:** reportaclaim@hiscox.com

**Phone:** 866-424-8508

**Mail:** Attn: Direct Claims
Hiscox
520 Madison Avenue - 32nd Floor
New York, NY, 10022

Exhibit "A"



**GET THE RIGHT INSURANCE, RIGHT NOW**

# Declarations Page

Exhibit "A"



**HISCOX**

**Hiscox Insurance Company Inc.**

104 South Michigan Avenue, Suite 600 Chicago Illinois 60603

## Commercial General Liability Declarations

**In return for the payment of the premium, and subject to all the terms of this Policy, we agree with you to provide the insurance as stated in this Policy.**

| | |
|---|---|
| Policy No.: | UDC-1920438-CGL-17 |
| Named Insured: | Business Moves |
| Address: | 5965 highway 18 W<br>suite 208<br>jackson, MS 39209 |

| Policy period: | From: | March 02, 2017 | To: | March 02, 2018 |
|---|---|---|---|---|

At 12:01 A.M. (Standard Time) at the address shown above.

| | |
|---|---|
| Form of Business: | Corporation or other Organization |
| Each Occurrence Limit: | $ 2,000,000 |
| Damage to Premises Rented to You Limit: | $ 100,000      Any one premises |
| Medical Expense Limit: | $ 5,000      Any one person |
| Personal & Advertising Injury Limit: | $ 2,000,000      Any one person or organization |
| General Aggregate Limit: | $ 2,000,000 |
| Products/Completed Operations Aggregate Limit: | Products-completed operations are subject to the General Aggregate Limit |
| Supplemental Business Personal Property Floater Coverage Limit: | $0 |
| Supplemental Business Personal Property Floater Coverage Deductible: | Not Applicable |

All Premises You Own, Rent or Occupy

| | |
|---|---|
| Premises Number: | 1 |
| Address: | 3210 John Hancock<br>Columbus, MS 39705 |
| **Total Premium:** | ▮▮▮▮ |
| **Attachments:** | See attached Forms and Endorsements Schedule. |



**Hiscox Insurance Company Inc.**
104 South Michigan Avenue, Suite 600 Chicago Illinois 60603

IN WITNESS WHEREOF, the Insurer indicated above has caused this Policy to be signed by its President and Secretary, but this Policy shall not be effective unless also signed by the Insurer's duly authorized representative.

President

Secretary

Authorized Representative

 **HISCOX INSURANCE COMPANY INC. (A Stock Company)**
104 South Michigan Avenue, Suite 600, Chicago, Illinois 60603

# Forms and Endorsements Schedule

Forms and Endorsements made part of this policy at time of issue:

CGL D001 01 10 - Commercial General Liability Declarations
CG 00 01 12 07 - General Liability Coverage Form
CGL E5401 CW (03/10) - Definition of Employee
CGL E5403 CW (03/10) - Notice Information
CGL E5404 CW (03/10) - Exclusion - Personal Information
CGL E5407 CW (03/10) - Exclusion - Professional Services
CGL E5408 CW (03/10) - Cancellation Provision (14 Day Full Refund)
CGL E5409 CW (03/10) - Right and Duty to Select Defense Counsel
CGL E5421 CW (02/14) - Additional Insured - Automatic Status
CG 04 37 12 04 - Electronic Data Liability
IL 00 17 11 98 - Common Policy Conditions
IL 00 21 09 08 - Nuclear Energy Liability Exclusion Endorsement (Broad Form)
CG 00 68 05 09 - Recording and Distribution of Material or Information in Violation of Law Exclusion
CG 21 41 11 85 - Exclusion - Intercompany Products Suits
CG 21 73 01 15 - Exclusion Of Certified Acts Of Terrorism
IL 02 82 09 08 - Mississippi Changes - Cancellation and Nonrenewal
INT N001 CW (01/09) - Economic And Trade Sanctions Policyholder Notice

Exhibit "A"



**HISCOX**

GET THE RIGHT INSURANCE, RIGHT NOW

# Policy Wording



COMMERCIAL GENERAL LIABILITY
CG 00 01 12 07

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

© ISO Properties, Inc., 2006

Exhibit "A"

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© ISO Properties, Inc., 2006

CG 00 01 12 07        o

Exhibit "A"

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**(i)** Any insured; or

**(ii)** Any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

**(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

© ISO Properties, Inc., 2006

o

Exhibit "A"

(2) Any loss, cost or expense arising out of any:

   (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

   (b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

   (a) Less than 26 feet long; and

   (b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of:

   (a) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

   (b) the operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

 © ISO Properties, Inc., 2006   o

Exhibit "A"

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section **III** – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Distribution Of Material In Violation Of Statutes**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**(3)** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

Exhibit "A"

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III – Limits Of Insurance.**

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III – Limits Of Insurance;** and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of websites for others; or

© ISO Properties, Inc., 2006

o

Exhibit "A"

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a.**, **b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-Related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Distribution Of Material In Violation Of Statutes**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**(3)** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

**COVERAGE C MEDICAL PAYMENTS**

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

© ISO Properties, Inc., 2006

Exhibit "A"

## 2. Exclusions

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A.**

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

   **a.** All expenses we incur.

   **b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

   **c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

   **d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

   **e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

   **f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

   **g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

   These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

   **a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

   **b.** This insurance applies to such liability assumed by the insured;

   **c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

   **d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

   **e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

   **f.** The indemnitee:

   (1) Agrees in writing to:

      (a) Cooperate with us in the investigation, settlement or defense of the "suit";

      (b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

      (c) Notify any other insurer whose coverage is available to the indemnitee; and

      (d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

   (2) Provides us with written authorization to:

      (a) Obtain records and other information related to the "suit"; and

© ISO Properties, Inc., 2006

o

Exhibit "A"

**(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II – WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by,

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

Exhibit "A"

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

**a.** Medical expenses under Coverage **C**;

**b.** Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

**c.** Damages under Coverage **B**.

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to Paragraph **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

**a.** Damages under Coverage **A;** and

**b.** Medical expenses under Coverage **C**

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

**6.** Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

**7.** Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

© ISO Properties, Inc., 2006

CG 00 01 12 07

Exhibit "A"

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

(1) This insurance is excess over:

(a) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(i) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(ii) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(iii) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(iv) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section I – Coverage **A** – Bodily Injury And Property Damage Liability.

(b) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

(2) When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

Exhibit "A"

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

© ISO Properties, Inc., 2006

Exhibit "A"

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

**(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

**9.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

Exhibit "A"

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

    **a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

    **b.** While it is in or on an aircraft, watercraft or "auto"; or

    **c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

    **a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    **b.** Vehicles maintained for use solely on or next to premises you own or rent;

    **c.** Vehicles that travel on crawler treads;

    **d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

        **(1)** Power cranes, shovels, loaders, diggers or drills; or

        **(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

    **e.** Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

        **(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

        **(2)** Cherry pickers and similar devices used to raise or lower workers;

    **f.** Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

    **(1)** Equipment designed primarily for:

        **(a)** Snow removal;

        **(b)** Road maintenance, but not construction or resurfacing; or

        **(c)** Street cleaning;

    **(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    **(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    **a.** False arrest, detention or imprisonment;

    **b.** Malicious prosecution;

    **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

    **f.** The use of another's advertising idea in your "advertisement"; or

    **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

© ISO Properties, Inc., 2006

CG 00 01 12 07

    o

Exhibit "A"

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

  **a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

    **(1)** Products that are still in your physical possession; or

    **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

      **(a)** When all of the work called for in your contract has been completed.

      **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

      **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

    Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

  **b.** Does not include "bodily injury" or "property damage" arising out of:

    **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

    **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

    **(3)** Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

  **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

  **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

  For the purposes of this insurance, electronic data is not tangible property.

  As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

  **a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

  **b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

  **a.** Means:

    **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

      **(a)** You;

      **(b)** Others trading under your name; or

      **(c)** A person or organization whose business or assets you have acquired; and

    **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

  **b.** Includes:

    **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**CG 00 01 12 07**

© ISO Properties, Inc., 2006

**Page 15 of 16**

o

Exhibit "A"

      **(2)** The providing of or failure to provide warn-
          ings or instructions.

   **c.** Does not include vending machines or other
      property rented to or located for the use of oth-
      ers but not sold.

**22.** "Your work":

   **a.** Means:

      **(1)** Work or operations performed by you or on
          your behalf; and

      **(2)** Materials, parts or equipment furnished in
          connection with such work or operations.

   **b.** Includes:

      **(1)** Warranties or representations made at any
          time with respect to the fitness, quality, du-
          rability, performance or use of "your work",
          and

      **(2)** The providing of or failure to provide warn-
          ings or instructions.

         © ISO Properties, Inc., 2006          **CG 00 01 12 07**    □

Exhibit "A"



**GET THE RIGHT INSURANCE, RIGHT NOW**

# Endorsements



**Hiscox Insurance Company Inc.**

Policy Number:        UDC-1920438-CGL-17
Named Insured:        Business Moves
Endorsement Number:   1
Endorsement Effective: March 02, 2017

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED – AUTOMATIC STATUS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A. Section II – Who Is An Insured** is amended to include as an additional insured any person(s) or organization(s) for whom you are performing operations or leasing a premises when you and such person(s) or organization(s) have agreed in writing in a contract or agreement that such person(s) or organization(s) be added as an additional insured on your policy.  Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

1. In the performance of your ongoing operations; or

2. In connection with your premises owned by or rented to you.

A person's or organization's status as an additional insured under this endorsement ends when your operations or lease agreement for that additional insured are completed.

Exhibit "A"



**Hiscox Insurance Company Inc.**

Policy Number:        UDC-1920438-CGL-17
Named Insured:        Business Moves
Endorsement Number:   2
Endorsement Effective: March 02, 2017

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# RIGHT AND DUTY TO SELECT DEFENSE COUNSEL

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

In regard to any covered "suit" seeking damages under **Section I – COVERAGE A – BODILY IN-JURY AND PROPERTY DAMAGE LIABILITY** or **COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**, our right and duty to defend shall include the right to select defense counsel.

CGL E5409 CW (03/10)                                                                      Page 1 of 1

Exhibit "A"



**Hiscox Insurance Company Inc.**

Policy Number:          UDC-1920438-CGL-17
Named Insured:          Business Moves
Endorsement Number: 3
Endorsement Effective: March 02, 2017

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION – PERSONAL INFORMATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Paragraph **2. Exclusions**  under **Section I – COV-ERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY, COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY,**  and **COVERAGE C – MEDICAL PAYMENTS** is amended to include the following exclusion:

**Personal Information**
"Bodily injury", "property damage" or "personal and advertising injury" caused by the insured's failure to protect any non-public, personally identifiable infor-mation in the insured's care, custody or control.

CGL E5404 CW (03/10)                                                                 Page 1 of 1

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Exhibit "A"



**Hiscox Insurance Company Inc.**

Policy Number:          UDC-1920438-CGL-17
Named Insured:          Business Moves
Endorsement Number:  4
Endorsement Effective: March 02, 2017

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

---

# CANCELLATION PROVISION
# (14 DAY FULL REFUND)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

All Coverage Parts included in this policy are subject to the following condition:

Notwithstanding anything in the "**COMMON POLICY CONDITIONS**" or any other cancellation provision to the contrary, if the first Named Insured cancels within 14 days of the inception of the policy period shown in the Declarations without there having been:  (i) an "occurrence" that caused "bodily injury" or "property damage"; (ii) an offense arising out of your business that caused a "personal and advertising injury"; or (iii) an accident that caused "bodily injury"; then we shall return in full any premium amount actually paid to us.  In such event, the effective date of cancellation shall be deemed to be the inception date of the policy period shown in the Declarations.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Exhibit "A"



**Hiscox Insurance Company Inc.**

Policy Number:        UDC-1920438-CGL-17
Named Insured:        Business Moves
Endorsement Number:  5
Endorsement Effective: March 02, 2017

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# NOTICE INFORMATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| Where To Send Notice |
| --- |
| Phone:    866-424-8508 |
| Email:    reportaclaim@hiscox.com |
| Mail:     Hiscox |
|          520 Madison Avenue-32nd Floor |
|          Attn: Direct Claims |
|          New York, NY, 10022 |

Subparagraph **2. Duties In The Event Of Occur-
rence, Offense, Claim Or Suit** in **Section IV –
COMMERCIAL GENERAL LIABILITY CONDI-
TIONS** is amended to include the following:

Any notification required by this policy shall be pro-
vided to us at the address listed in the above
**SCHEDULE**.

*CGL E5403 CW (03/10)*

Page 1 of 1

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Exhibit "A"



**Hiscox Insurance Company Inc.**

Policy Number:          UDC-1920438-CGL-17
Named Insured:          Business Moves
Endorsement Number: 6
Endorsement Effective: March 02, 2017

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

---

# DEFINITION OF EMPLOYEE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

In **Section V – DEFINITIONS**, Definition 5. "Employee" is deleted and replaced with the following:

5.   "Employee" includes a "leased worker" and a "temporary worker".

CGL E5401 CW (03/10)                                                                                          Page 1 of 1

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Exhibit "A"



**Hiscox Insurance Company Inc.**

Policy Number:          UDC-1920438-CGL-17
Named Insured:          Business Moves
Endorsement Number:  7
Endorsement Effective: March 02, 2017

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – PROFESSIONAL SERVICES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Paragraph **2. Exclusions** under **Section I – COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, and **COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**, is amended to include the following exclusion:

**Professional Services**

"Bodily injury", "property damage" or "personal and advertising injury" caused by the rendering or failure to render any professional service.

This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering or failure to render any professional service.

CGL E5407 CW (03/10)

Page 1 of 1

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Exhibit "A"



**Hiscox Insurance Company Inc.**

Policy Number: UDC-1920438-CGL-17
Named Insured: Business Moves
Endorsement Number: 8
Endorsement Effective: March 02, 2017

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

---

## NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

Exhibit "A"

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

© ISO Properties, Inc., 2007

IL 00 21 09 08

Exhibit "A"



**Hiscox Insurance Company Inc.**

Policy Number: UDC-1920438-CGL-17
Named Insured: Business Moves
Endorsement Number: 9
Endorsement Effective: March 02, 2017

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections And Surveys**

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

**IL 00 17 11 98**          Copyright, Insurance Services Office, Inc., 1998          **Page 1 of 2**

Exhibit "A"

**F. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc., 1982, 1983                    **IL 00 17 11 98**

Exhibit "A"



**HISCOX**

**Hiscox Insurance Company Inc.**

Policy Number:    UDC-1920438-CGL-17
Named Insured:   Business Moves
Endorsement Number: 10
Endorsement Effective: March 02, 2017

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ELECTRONIC DATA LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**Schedule**

| Loss Of Electronic Data Limit: | $ 25,000 |
|---|---|
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A.** Exclusion **2.p.** of **Coverage A – Bodily Injury And Property Damage Liability** in **Section I – Coverages** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate "electronic data" that does not result from physical injury to tangible property.

**B.** The following paragraph is added to **Section III – Limits Of Insurance:**

Subject to **5.** above, the Loss of Electronic Data Limit shown in the Schedule above is the most we will pay under Coverage **A** for "property damage" because of all loss of "electronic data" arising out of any one "occurrence".

**C.** The following definition is added to the **Definitions** Section:

"Electronic data" means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**D.** For the purposes of the coverage provided by this endorsement, the definition of "Property Damage" in the **Definitions** Section is replaced by the following:

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it;

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it; or

**c.** Loss of, loss of use of, damage to, corruption of, inability to access, or inability to properly manipulate "electronic data", resulting from physical injury to tangible property. All such loss of "electronic data" shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, "electronic data" is not tangible property.

CG 04 37 12 04      © ISO Properties, Inc., 2003      Page 1 of 1



**Hiscox Insurance Company Inc.**

Policy Number: UDC-1920438-CGL-17
Named Insured: Business Moves
Endorsement Number: 11
Endorsement Effective: March 02, 2017

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – INTERCOMPANY PRODUCTS SUITS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to any claim for damages by any Named Insured against another Named Insured because of "bodily injury" or "property damage" arising out of "your products" and included within the "products-completed operations hazard."

**CG 21 41 11 85**      Copyright, Insurance Services Office, Inc., 1984      **Page 1 of 1**

Exhibit "A"


# HISCOX

**Hiscox Insurance Company Inc.**

Policy Number:            UDC-1920438-CGL-17
Named Insured:            Business Moves
Endorsement Number: 12
Endorsement Effective: March 02, 2017

# RECORDING AND DISTRIBUTION OF MATERIAL OR INFORMATION IN VIOLATION OF LAW EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **q.** of Paragraph **2. Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

**B.** Exclusion **p.** of Paragraph **2. Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**p. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

CG 00 68 05 09                        © Insurance Services Office, Inc., 2008                        Page 1 of 1

Exhibit "A"


**HISCOX**

**Hiscox Insurance Company Inc.**

Policy Number:        UDC-1920438-CGL-17
Named Insured:        Business Moves
Endorsement Number:  13
Endorsement Effective: March 02, 2017

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# MISSISSIPPI CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Paragraph **7.** is added to the **Cancellation** Common Policy Conditions:

**7.** If:

  **a.** The first Named Insured cancels this policy, we will notify any named creditor loss payee.

  **b.** We cancel this policy, we will mail or deliver our written notice of cancellation to any named creditor loss payee in the same manner and at the same time as notification is given to the first Named Insured, as stated in this Condition.

The provisions of Paragraphs **a.** and **b.** above do not apply to any mortgageholder.

**B.** Paragraphs **f.** and **g.** of the **Mortgageholders** Condition, if any, are replaced by the following:

**f.** If:

  **(1)** The first Named Insured cancels this policy, we will notify the mortgageholder.

  **(2)** We cancel this policy, we will give written notice to the mortgageholder at least 30 days before the effective date of cancellation.

We will notify the mortgageholder by mailing or delivering the cancellation notice to the last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

**g.** If:

  **(1)** The first Named Insured does not renew this policy, we will notify the mortgageholder.

  **(2)** We decide not to renew this policy, we will give written notice to the mortgageholder at least:

    **(a)** 10 days before an anniversary date or the expiration date of the policy, if the nonrenewal is due to nonpayment of premium; or

    **(b)** 30 days before an anniversary date or the expiration date of the policy, if the nonrenewal is for any other reason.

We will notify the mortgageholder by mailing or delivering the notice of nonrenewal to the last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

**C.** The following Condition is added and supersedes any provision to the contrary:

**NONRENEWAL**

**1.** If the first Named Insured does not renew this policy, we will notify any named creditor loss payee.

IL 02 82 09 08                  © ISO Properties, Inc., 2007                  Page 1 of 2

Exhibit "A"

Case 1:18-cv-10222-PAE   Document 39-1   Filed 02/05/19   Page 40 of 48

**2.** If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal to the first Named Insured and any named creditor loss payee, at least:

   **a.** 10 days before the effective date of nonrenewal, if the nonrenewal is due to nonpayment of premium; or

   **b.** 30 days before an anniversary date or the expiration date of the policy, if the nonrenewal is for any other reason.

We will notify the first Named Insured and any named creditor loss payee by mailing or delivering the notice of nonrenewal to the last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

The provisions of Paragraphs **1.** and **2.** above do not apply to any mortgageholder.

**D.** The requirements for notification of cancellation or nonrenewal of this policy, as stated in Paragraphs **A., B.** and **C.** above, supersede any other notification requirements to any named creditor loss payee and any mortgageholder, stated in this policy, including any endorsement attached to the policy.

**E.** Any named creditor loss payee and any mortgageholder may elect not to receive notification of cancellation or nonrenewal by providing us with a written release.

© ISO Properties, Inc., 2007

**IL 02 82 09 08**

Exhibit "A"



**HISCOX**

**Hiscox Insurance Company Inc.**

Policy Number:     UDC-1920438-CGL-17
Named Insured:    Business Moves
Endorsement Number:  14
Endorsement Effective:  March 02, 2017

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of a "certified act of terrorism".

**B.** The following definitions are added:

  **1.** For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

  **2.** "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

    **a.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

    **b.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**C.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

© Insurance Services Office, Inc., 2014

Exhibit "A"



**HISCOX**

**GET THE RIGHT INSURANCE, RIGHT NOW**

# Notices



**Hiscox Insurance Company Inc.**

## ECONOMIC AND TRADE SANCTIONS POLICYHOLDER NOTICE

---

Hiscox is committed to complying with the U.S. Department of Treasury Office of Foreign Assets Control (OFAC) requirements. OFAC administers and enforces economic sanctions policy based on Presidential declarations of national emergency. OFAC has identified and listed numerous foreign agents, front organizations, terrorists, and narcotics traffickers as Specially Designated Nationals (SDN's) and Blocked Persons. OFAC has also identified Sanctioned Countries. A list of Specially Designated Nationals, Blocked Persons and Sanctioned Countries may be found on the United States Treasury's web site http://www.treas.gov/offices/enforcement/ofac/.

Economic sanctions prohibit all United States citizens (including corporations and other entities) and permanent resident aliens from engaging in transactions with Specially Designated Nationals, Blocked Persons and Sanctioned Countries. Hiscox may not accept premium from or issue a policy to insure property of or make a claim payment to a Specially Designated National or Blocked Person. Hiscox may not engage in business transactions with a Sanctioned Country.

A Specially Designated National or Blocked Person is any person who is determined as such by the Secretary of Treasury.

A Sanctioned Country is any country that is the subject of trade or economic embargoes imposed by the laws or regulations of the United States.

In accordance with laws and regulations of the United States concerning economic and trade embargoes, this policy may be rendered void from its inception with respect to any term or condition of this policy that violates any laws or regulations of the United States concerning economic and trade embargoes including, but not limited to the following:

(1) Any insured under this Policy, or any person or entity claiming the benefits of such insured, who is or becomes a Specially Designated National or Blocked Person or who is otherwise subject to US economic trade sanctions;

(2) Any claim or suit that is brought in a Sanctioned Country or by a Sanctioned Country government, where any action in connection with such claim or suit is prohibited by US economic or trade sanctions;

(3) Any claim or suit that is brought by any Specially Designated National or Blocked Person or any person or entity who is otherwise subject to US economic or trade sanctions;

(4) Property that is located in a Sanctioned Country or that is owned by, rented to or in the care, custody or control of a Sanctioned Country government, where any activities related to such property are prohibited by US economic or trade sanctions; or

(5) Property that is owned by, rented to or in the care, custody or control of a Specially Designated National or Blocked Person, or any person or entity who is otherwise subject to US economic or trade sanctions.

Please read your Policy carefully and discuss with your broker/agent or insurance professional. You may also visit the US Treasury's website at http://www.treas.gov/offices/enforcement/ofac/.

---

INT N001 CW 01 09

Page 1 of 1



**HISCOX**

**GET THE RIGHT INSURANCE, RIGHT NOW**

# Application Summary

Exhibit "A"



**Hiscox Insurance Company Inc.**

## Application Summary

The following outlines the details you have given us about your business. We have relied on the accuracy of this information in order to issue your policy. If any of the items below are incorrect or have changed, please call us at 888-202-3007 so that we can update your policy details.

### Your policy

| | |
|---|---|
| Policy number: | UDC-1920438-CGL-17 |
| Quote reference number: | 6291215 |
| Product: | Commercial General Liability |
| Business name: | Business Moves |
| Business address: | 5965 highway 18 W |
| | suite 208 |
| City: | jackson |
| State: | MS |
| Zip code: | 39209 |
| Name: | Curtis Bordenave |
| Email address: | cpaulbordenave@yahoo.com |
| Telephone number: | 504-373-0984 |
| Per occurrence limit of liability: | $ 2,000,000 |
| When would you like your policy to start? | March 02, 2017 |

### Your business

| | |
|---|---|
| What is your primary type of business? | Business Consulting |
| Your business's ownership structure (please select one). | Corporation or other Organization (other than the above) |
| Do you currently have an insurance policy in effect for the coverage requested? | Yes |
| Please provide the name of your insurance carrier: | State Farm |

Exhibit "A"



**Hiscox Insurance Company Inc.**

| | |
|---|---|
| Including yourself, how many full-time, part-time, and temporary employees does your business have? (Do not include subcontractors.) | 1-4 |
| Is your business operated out of your home? | No |
| Other than the business address provided above, how many additional locations does your business own or rent? | 0 |
| Address: | Not Applicable |
| Do you or your business supply, manufacture, or distribute any tangible goods or products? Note: Brochures, documents and reports are not considered as tangible goods. | Yes |
| Are the products you provide as part of your services limited to those manufactured by others and do the total sales from these products represent less than 25% of your estimated annual gross sales? | Yes |
| Does your business perform any design, construction, installation, removal, or physical repair of any property or tangible good? | No |
| For the next 12 months, what is your estimated payroll expense for yourself, your full-time, part-time, and temporary employees?  (Do not include subcontractors.) | $ 35,000 |
| Does your business provide any of the following services?<br>• Aerospace consulting or advice<br>• Actuarial advice<br>• Architecture or engineering advice<br>• Construction management or advice<br>• Credit counseling<br>• Environmental consulting or advice<br>• Financing or financial auditing<br>• General contracting<br>• Investment or tax advice<br>• Insurance placement or advice<br>• Land acquisition<br>• Law enforcement training<br>• Legal advice<br>• Lobbying and/or political advice<br>• Medical advice<br>• Mergers and acquisitions or business valuations<br>• Mining consulting or advice<br>• Oil, gas, or petroleum consulting or advice<br>• Safety consulting or advice<br>• Sales representative. | No |

Exhibit "A"



# HISCOX

**Hiscox Insurance Company Inc.**

## Statements About Your Business

| | |
|---|---|
| As the individual completing this transaction, you are authorized to purchase and bind this insurance on behalf of the entity applying for coverage. | I have read and agree |
| Your business is not controlled or owned by any other firm, corporation, or entity. | I have read and agree |
| For the entire period of time that you have owned and controlled the business, You have not sold, purchased or acquired, discontinued, merged into or consolidated with another business. | I have read and agree |
| Your business has never had any commercial insurance cancelled or rescinded. | I have read and agree |

## Business Activities

Your Business does not conduct any of the following activities:
- Automotive repair or sales
- Food service/restaurant operations
- Medical services
- Retail operations
Note:  This does not include the activities of your clients in any of these industries

I have read and agree

## Claims and Loss History

Based upon your knowledge and the knowledge of your business's current and past partners, officers, directors and employees, during the last five years a third party has never made a claim against your business and you do not know of any reason why someone may make a claim.

I have read and agree

## General Liability

The limits of liability represent the total amount available to pay judgments and settlements for any claims. We are not liable for any amounts that exceed these limits.

If coverage is provided, it shall apply only to occurrences that take place during the policy period.

Judgments, settlements and claims expenses incurred are subject to a deductible amount.  The deductible is the amount you must pay before we will make any payments under the policy. Some coverage may not be subject to a deductible, in which case you are not required to make payments before any payments are made under the policy. Please consult the policy language for details.

If you have knowledge of any circumstance that may lead to a loss or a claim being made against you, coverage will be excluded if such loss occurs or claim is made.

Occurrences that took place prior to the inception of the policy are excluded.

Exhibit "A"



**Hiscox Insurance Company Inc.**

## Other information

**Fraud Warning**

It is a crime to knowingly and intentionally attempt to defraud an insurance company by providing false or misleading information or concealing material information during the application process or when filing a claim. Such conduct could result in your policy being voided and subject you to criminal and civil penalties.

**Optional Terrorism coverage**

| | |
|---|---|
| You have declined to purchase optional terrorism coverage. | Yes |

**Optional Waiver of Subrogation**

| | |
|---|---|
| You have declined to purchase a Waiver of Subrogation. | Yes |
| You have confirmed that you agree with the General Statements provided. | Yes |
| I agree to accept delivery of my insurance policy via email to the address provided. | Yes |
| I have read the information above and confirm it is all correct. I understand that by checking this box I am agreeing to enter into a binding agreement with Hiscox Insurance. | Yes |

**Optional Business Personal Property Coverage**

| | |
|---|---|
| You have declined to purchase optional business personal property and equipment coverage: | Yes |

© Hiscox Inc. 2010

Exhibit "A"