UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                             :

HISCOX INSURANCE CO., INC.,

                         Plaintiff,      :            18 Civ. 10222 (PAE)

                                      :            <u>OPINION & ORDER</u>

             -v-                      :

CURTIS BORDENAVE, et al.,                :

                         Defendants.    :

------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

      Hiscox Insurance Company, Inc. ("Hiscox") brings this action against Curtis Bordenave

and Business Moves Consulting, Inc. ("Business Moves" and, together with Bordenave,

"defendants"), seeking a declaration that Hiscox is not obligated to defend or indemnify

defendants in an underlying trademark infringement lawsuit brought against defendants in this

District.  Currently pending before the Court are two motions:  First, defendants move to dismiss

for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).  Second, Hiscox

moves for a default judgment as to Business Moves.  For the following reasons, the Court grants

defendants' motion to dismiss under Rule 12(b)(2) and denies, as moot, Hiscox's motion.

# I.      Background

## A.      Facts[1]

### 1.      The Parties

Hiscox is an Illinois insurance corporation with its principal place of business in Illinois.

Compl. ¶ 6.  At the time the Complaint was filed in this case, Bordenave resided and was

domiciled in Texas.  *Id.* ¶ 9.  He now avers that, as of at least February 2019, he is a resident of

Mississippi and intends to reside there permanently.  Bordenave Aff. ¶¶ 8–9.  Business Moves is

a Mississippi corporation.  *Id.* ¶ 13.

### 2.      The Insurance Policies

Hiscox issued a commercial general liability policy (the "CGL Policy") to Business

Moves for the policy period March 2, 2017, to March 2, 2018.  Compl. ¶ 14; *id.*, Ex. A.

Bordenave is listed as an insured with respect to his duties as an officer or director of Business

Moves.  Compl. ¶ 15.  Coverage A of the CGL Policy affords liability coverage to Business

---

[1] The Court's account of Hiscox's factual allegations is drawn from the Complaint.  Dkt. 1 ("Compl.").  On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the Court may look beyond the four corners of the complaint and consider all pleadings and accompanying affidavits and declarations, while still "resolving all doubts in [plaintiff's] favor." *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001) (citation omitted); *Advanced Portfolio Techs., Inc. v. Advanced Portfolio Techs. Ltd.*, No. 94 Civ. 5620 (JFK), 1997 WL 401810, at *2 (S.D.N.Y. July 16, 1997).  Accordingly, in connection with defendants' motion to dismiss, the Court has considered defendants' memorandum of law in support of their motion, Dkt. 39 ("Def. Mem."), and exhibits attached thereto; the affidavit of Curtis Bordenave in support of defendants' motion to dismiss, Dkt. 40 ("Bordenave Aff."); Hiscox's memorandum of law in opposition to defendants' motion, Dkt. 44 ("Pl. Mem."), and defendants' reply in support of their motion, Dkt. 45 ("Def. Reply").

In connection with Hiscox's motion for default judgment, the Court has considered the supporting declaration of Laura Dowgin, Dkt. 33 ("Dowgin Decl."), and exhibits attached thereto; defendants' memorandum of law in opposition, Dkt. 41 ("Def. Default Mem."); the affirmation of Tanner Bryce Jones in opposition, Dkt. 42 ("Jones Aff."), and exhibits attached thereto; the affidavit of Mack Charles Pampley III in opposition, Dkt. 43 ("Pampley Aff."), and exhibits attached thereto; and Hiscox's memorandum of law, *see* Pl. Mem.

Moves for those sums it is obligated to pay as damages because of "bodily injury" or "property damage" during the policy period caused by an "occurrence." *Id.* ¶ 16.  Coverage B of the CGL Policy further provides liability coverage to Business Moves for damages resulting from "personal and advertising injury" caused by an offense committed during the policy period. *Id.* ¶ 18.  With respect to Coverage B, the CGL Policy contains the following relevant exclusions:

> **a.      Knowing Violation of Rights of Another**
> "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."
>
> **b.      Material Published with Knowledge of Falsity**
> "Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.
>
> . . .
>
> **d.      Criminal Acts**
> "Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.
>
> . . .
>
> **i.      Infringement of Copyright, Patent, Trademark or Trade Secret**
> "Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights . . . .  However, this exclusion does not apply to infringement, in your "advertisement," of copyright, trade dress or slogan.
>
> . . .
>
> **l.      Unauthorized Use of Another's Name or Product**
> "Personal and advertising injury" arising out of the unauthorized use of Another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

*Id.* ¶ 19.

Hiscox also issued a second insurance policy, the Professional Liability Policy (the "PL Policy," and, together with the CGL Policy, the "Policies"), to Business Moves, also for the

policy period March 2, 2017, to March 2, 2018. *Id.* ¶ 21; *id.*, Ex. B.  As with the CGL Policy,

the PL Policy lists Bordenave as an insured, with respect to his duties as an employee of

Business Moves.  Compl. ¶ 22.  The PL Policy contains several relevant exclusions.

Specifically, it provides that the PL Policy does not apply to any claims:

> A.      based upon or arising out of any actual or alleged fraud, dishonesty, criminal
> conduct, or any knowingly wrongful, malicious, or intentional acts or omissions . . .
> unless the otherwise covered intentional acts or omissions results "in a personal
> injury."
>
> B.      based upon or arising out of any actual or alleged gaining of any profit or
> advantage to which [insureds] were not legally entitled.
>
> . . .
>
> M.      based upon or arising out of any actual or alleged infringement of any
> copyright, trademark, trade dress, trade name, service mark, service name, title,
> slogan or patent or theft of trade secret.
>
> N.      based upon or arising out of any actual or alleged false or deceptive
> advertising of [insureds'] goods or services or misrepresentation in advertising of
> [insureds'] goods or services, including but not limited to any wrongful description
> of prices or [insureds'] goods or services or the quality or performance of
> [insureds'] goods or services.

*Id.* ¶ 24.

### 3.      The Underlying Action

On June 8, 2018, Khaled M. Khaled and ATK Entertainment, Inc. (together, the

"Underlying Plaintiffs"), initiated a lawsuit in this District before this Court.  *See Khaled et al. v.*

*Bordenave et al.*, No. 18 Civ. 5187 (PAE) (S.D.N.Y.) (the "Underlying Action").  There,

Underlying Plaintiffs assert that Business Moves is in the business of "appropriating names or

trademarks popularized by others and attempting to assert trademark rights over them—either for

the purpose of unfairly capitalizing on the goodwill associated with the names and trademarks

through the sale of t-shirts bearing them, or for the purpose of extracting a large payment from

the target of Defendants' predatory conduct." Underlying Action, Dkt. 10 ("Underlying Compl.") ¶ 39.  Specifically, Underlying Plaintiffs allege that shortly after the birth of Khaled's son, Business Moves "intentionally targeted Khaled and his son by using and applying to register" trademarks in connection with them.  *Id.* ¶ 3.  This conduct, Underlying Plaintiffs allege, "was done with the full knowledge of the fact that such activity violates" Underlying Plaintiffs' "exclusive rights" in certain marks, and that the alleged conduct was "intentionally fraudulent, malicious, willful and wanton."  *Id.* ¶ 60.  Underlying Plaintiffs initially asserted eight causes of action; on April 29, 2019, Underlying Plaintiffs filed an amended complaint to add additional related claims.  Underlying Action, Dkt. 58 ("Underlying Am. Compl.").

On June 25, 2018, Hiscox delivered a letter to Business Moves disclaiming coverage under the PL Policy with respect to the Underlying Action and agreeing to provide a defense pursuant to an express reservation of rights under the CGL Policy.  Compl. ¶ 38.  On July 20, 2018, Hiscox delivered a letter to Business Moves providing a further reservation of rights letter and stating that all claims asserted in the Underlying Action appeared outside the Policies' coverage.  *Id.* ¶ 39.  The letter further stated that Hiscox would agree to continue to defend Business Moves in connection with the Underlying Action under the CGL Policy until a declination was issued or a court ordered that no coverage was owed.  *Id.*

### B.    Procedural History

On November 2, 2018, Hiscox initiated this declaratory judgment action.  Dkt. 1.  On December 3, 2018, the Court received a letter from Business Moves seeking an extension of time to file a responsive pleading because it was seeking counsel to represent it in this matter.  On December 4, 2018, the Court granted that request and extended the time for Business Moves to file a responsive pleading to December 31, 2018.  Dkt. 10.  The Court further advised that

because Business Moves was a corporate entity, it could not represent itself *pro se* in this matter, and that all further filings should be submitted by counsel.  *Id.*

On December 18, 2018, Bordenave filed a letter seeking an extension as to himself. Dkt. 12.  On December 20, 2018, the Court granted that request and extended Bordenave's deadline to respond to January 19, 2019.  Dkt. 13.

On December 28, 2018, Hiscox voluntarily dismissed Khaled and ATK Entertainment— which had also been named as defendants—from the lawsuit.  Dkt. 15.

On January 2 and 3, 2019, after Business Moves' deadline to respond had passed, Hiscox sought and obtained a Clerk's Certificate of Default.  Dkts. 16–18.  On January 4, 2019, Business Moves filed a letter seeking, *nunc pro tunc*, an extension of its deadline to file a responsive pleading.  Dkt. 19.  On January 8, 2019, the Court granted that request, extending Business Moves' deadline to respond to January 22, 2019.  Dkt. 21.

On January 16, 2019, Bordenave filed a letter requesting an additional 30-day extension of time to respond, to enable him to find counsel.  Dkt. 24.   On January 22, 2019, the Court granted that request and further extended the time for Bordenave to respond to February 19, 2019.  Dkt. 27.

On January 23, 2019, after Business Moves' twice-extended deadline to answer elapsed, Hiscox moved for default judgment as to Business Moves.  Dkt. 32.

On January 31, 2019, counsel appeared for the first time on behalf of both defendants. Dkt. 35.  On February 15, 2019—before Bordenave's deadline to respond, but after Business Moves' deadline—both defendants filed a motion to dismiss for lack of personal jurisdiction. Dkt. 38.  Defendants also filed a memorandum and affidavit in support of their motions.  Dkts.

39–40. Also on February 15, 2019, defendants filed a memorandum and two affirmations in opposition to Hiscox's motion for default judgment as to Business Moves. Dkts. 41–43.

On February 20, 2019, Hiscox filed a memorandum in opposition to defendants' motion to dismiss and in further support of its motion for default judgment as to Business Moves. Dkt. 44. On February 26, 2019, defendants filed a reply memorandum in support of their motion to dismiss. Dkt. 45.

Recently, on June 14, 2019, while the motions to dismiss and for default judgment were pending, Hiscox sought leave to file an amended complaint. Dkt. 46. It sought leave to add a "cause of action regarding Curtis Bordenave's and Business Moves' . . . breach of the cooperation provision in the insurance policy at issue, as well as add additional fact allegations to support its entitlement to a declaration that it does not owe any duty to defend or indemnify [d]efendants." Dkt. 47. On June 18, 2019, the Court denied that request, without prejudice, stating that "Hiscox does not argue that the proposed amended complaint would allege new facts regarding personal jurisdiction, and the proposed amended complaint does not contain substantially new or different facts with respect to personal jurisdiction." Dkt. 49. The Court accordingly denied Hiscox's motion, "without prejudice to re-file a request for leave to amend after the adjudication of defendants' motion." *Id.*

## II.     Applicable Legal Standards

### A.     Personal Jurisdiction

"[T]he plaintiff bears the burden of establishing that the court has jurisdiction over the defendant." *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001); *see also In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013). "[T]he showing a plaintiff must make to defeat a defendant's claim that the court lacks personal jurisdiction over it 'varies

depending on the procedural posture of the litigation.'" *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (quoting *Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)).

"Where, as here, a district court in adjudicating a motion pursuant to Federal Rule of Civil Procedure 12(b)(2) 'relies on the pleadings and affidavits, and chooses not to conduct a full-blown evidentiary hearing, plaintiffs need only make a prima facie showing of personal jurisdiction.'" *S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010) (quoting *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008)). "This showing may be made through the plaintiff's 'own affidavits and supporting materials, containing an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant.'" *Id.* (quoting *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001)). The Court "construe[s] the pleadings and affidavits in the light most favorable to plaintiffs, resolving all doubts in their favor." *Dorchester*, 722 F.3d at 85 (quoting *S. New Eng. Tel.*, 624 F.3d at 138); *see also A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir. 1993). Nevertheless, the Court "will not draw argumentative inferences in the plaintiff's favor" and need not "accept as true a legal conclusion couched as a factual allegation." *In re Terrorist Attacks*, 714 F.3d at 673 (citations omitted); *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012).

To make out a *prima facie* case of personal jurisdiction, whether based on general or specific personal jurisdiction, plaintiffs must establish both "a statutory basis" for jurisdiction and that exercise of such jurisdiction accords "with constitutional due process principles." *Cortlandt St. Recovery Corp. v. Deutsche Bank AG, London Branch*, No. 14 Civ. 01568 (JPO), 2015 WL 5091170, at *2 (S.D.N.Y. Aug. 28, 2015) (quoting *Reich v. Lopez*, 38 F. Supp. 3d 436,

454 (S.D.N.Y. 2014)).  General personal jurisdiction subjects a defendant to suits on all claims.
*Id.*; *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).
Specific personal jurisdiction subjects a defendant to suits on only those claims that arise from
the defendant's conduct in the forum.  *Cortlandt*, 2015 WL 5091170, at *2; *see also Daimler AG
v. Bauman*, 571 U.S. 117, 126 (2014).

General personal jurisdiction in New York courts is exercised pursuant to N.Y. C.P.L.R.
§ 301, which provides that jurisdiction is proper when "a company has engaged in such a
continuous and systematic course of doing business [in New York] that a finding of its presence
[in New York] is warranted." *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224
(2d Cir. 2014) (internal quotation marks omitted); *see also Wiwa v. Royal Dutch Petroleum Co.*,
226 F.3d 88, 95 (2d Cir. 2000).  Specific personal jurisdiction is exercised pursuant to N.Y.
C.P.L.R. § 302.

**B.     Motion for Default Judgment**

The Court may grant a default judgment in favor of a plaintiff when a defendant has
failed to plead or otherwise defend an action.  *See* Fed. R. Civ. P. 55(a).  "The dispositions of
motions for entries of defaults and default judgments . . . are left to the sound discretion of a
district court because it is in the best position to assess the individual circumstances of a given
case and to evaluate the credibility and good faith of the parties." *Enron Oil Corp. v. Diakuhara*,
10 F.3d 90, 95 (2d Cir. 1993).  The Second Circuit has repeatedly emphasized its "preference for
resolving disputes on the merits," *id.*, and "when doubt exists as to whether default should be
granted or vacated, the doubt should be resolved in favor of the defaulting party," *id.* at 96.

III.   **Discussion**

A.   **Motion to Dismiss for Lack of Personal Jurisdiction**

Both Bordenave and Business Moves argue that Hiscox's declaratory judgment complaint must be dismissed because the Court lacks personal jurisdiction over them in this action and because venue is improper in this District.  Hiscox counters that defendants have waived the right to defend on grounds of lack personal jurisdiction because they (1) appeared in this action and (2) are defending the Underlying Action brought by Khaled in this District. Alternatively, Hiscox argues that defendants are subject to personal jurisdiction under N.Y. C.P.L.R. § 302 because they have transacted business in New York and allegedly engaged in tortious conduct in New York.  The Court considers these arguments in turn.

1.   **Waiver of Personal Jurisdiction**

Hiscox argues that, in three ways, defendants have waived a personal jurisdiction defense: first, by appearing in this action and seeking what Hiscox styles as affirmative relief in the form of extensions of time to respond to the Complaint; second, by, in the case of Business Moves, opposing Hiscox's motion for a default judgment; and, third, by appearing in, and litigating, the Underlying Action in this District.

"To waive or forfeit a personal jurisdiction defense, a defendant must give a plaintiff a reasonable expectation that it will defend the suit on the merits or must cause the court to go to some effort that would be wasted if personal jurisdiction is later found lacking." *Corporación Mexicana De Mantenimiento Integral, S. De R.L. De C.V. v. Pemex–Exploración Y Producción*, 832 F.3d 92, 102 (2d Cir. 2016) (quoting *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010)).  A litigant "forfeit[s] its

10

argument that personal jurisdiction is lacking" when it "affirmatively and successfully s[eeks] relief from t[he] Court." *Id.* at 101.

Hiscox's first argument is that defendants sought such "affirmative relief" when they requested extensions of time to answer so as to permit them time to find counsel. This argument is easily interred. Defendants raised their personal jurisdiction defense in their first responsive pleading, consistent with Federal Rule of Civil Procedure 12(h)(1). That defendants requested extensions of time to respond to Hiscox's Complaint is of no moment. As many courts have held, requests for extension of time to respond are far from the kind of "substantial pretrial activity" that typically warrant a finding of waiver. *See, e.g.*, *In re Helicopter Crash Near Wendle Creek, British Columbia on Aug. 8, 2002*, 485 F. Supp. 2d 47, 52 (D. Conn. 2007) (litigant's filing of two motions to extend time before filing motion to dismiss did not result in waiver of personal jurisdiction defense); *see also Berkowitz by Berkowitz v. New York City Bd. of Educ.*, 921 F. Supp. 963, 969 (E.D.N.Y. 1996) ("[A] stipulation between the parties extending a governmental defendant's time to answer or otherwise move against a claim does not equate to a waiver of personal jurisdiction objections."); *Elbex Video Kabushiki Kaisha v. Taiwan Regular Elecs. Co., Ltd., Inc.*, No. 93 Civ. 6160 (KMW), 1994 WL 185896, at *1–2 (E.D.N.Y. May 10, 1994) (stipulated requests for extensions of time and participation in one settlement discussion insufficient to waive a defense based on lack of personal jurisdiction due to improper service of process). A finding of a lack of waiver is particularly warranted here, where the purpose of the extensions sought was to enable defendants to find counsel, to assist them in defending this action, including on grounds of a lack of personal jurisdiction.

Hiscox's next argument—that Business Moves waived its personal jurisdiction defense by opposing Hiscox's motion for a default judgment—fares no better. The "submission of

papers in opposition to a motion for a default judgment" constitutes nothing more than "limited

contact" with the Court, *Arthur Williams, Inc. v. Helbig*, No. 00 Civ. 2169 (SHS), 2001 WL

536946, at *3 (S.D.N.Y. May 21, 2001), and does not suffice to waive a defense based on

personal jurisdiction.  To hold otherwise would force a non-moving party to choose between

preserving a personal jurisdiction defense or acceding to a default judgment.  The argument that

Business Moves waived its personal-jurisdiction defense by opposing Hiscox's default motion is

particularly misplaced here, given that Business Moves filed its opposition to the default motion

*after* it moved to dismiss Hiscox's complaint for lack of personal jurisdiction.  *See* Dkt. 38

(motion to dismiss); Dkt. 41 (Business Moves' memorandum in opposition to motion for default

judgment).

　　　　Hiscox next claims waiver on the ground that defendants have appeared in, and are

actively litigating, the Underlying Action in this District (indeed, before this Court).  They argue

that to permit defendants to consent to litigation in this forum in one case (the Underlying

Action) while objecting to the forum in a second (this coverage dispute) permits forum shopping.

Def. Mem. at 9.  This argument, too, is unavailing.  Defendants did not bring either action.  Thus,

although "there is some authority for the proposition that personal jurisdiction exists where a

defendant independently seeks *affirmative* relief in a separate action before the same court

concerning the same transaction or occurrence," *China Nat'l Chartering Corp. v. Pactrans Air &

Sea, Inc.*, 882 F. Supp. 2d 579, 591–92 (S.D.N.Y. 2012) (emphasis added), such authority is not

implicated here.  Defendants did not choose to avail themselves of the New York courts in the

Underlying Action.  They were sued in that case and to date have litigated that action on the

merits, including by answering the complaint, engaging in discovery, and opposing Underlying

Plaintiffs' motion to amend their complaint to assert additional claims.[2]  But "[a] defense on the merits in a suit brought by one party cannot constitute consent to suit as a defense brought by different parties." *Dow Chem. Co. v. Calderon*, 422 F.3d 827, 835 (9th Cir. 2005).  Hiscox's argument that defendants waived jurisdiction in this action merely by defending themselves on the merits in the Underlying Action fails.

### 2. N.Y. C.P.L.R. § 302

Hiscox next argues that, even if defendants have not waived a personal jurisdiction defense, personal jurisdiction exists here under N.Y. C.P.L.R. § 302, which governs the exercise of specific personal jurisdiction in New York.  It provides:

> (a) Acts which are the basis of jurisdiction.  As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:
>
>> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
>>
>> 2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or
>>
>> 3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he
>>
>>> (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives

---

[2] Defendants state that "they have not yet waived" a personal jurisdiction defense in the Underlying Action, "nor has the court in that matter made any finding on the issue."  Reply Mem. at 6.  For avoidance of doubt, the Court's discussion of personal jurisdiction here is limited to the instant case.  The Court has no occasion to opine on personal jurisdiction in the Underlying Action.  The Court notes that in the Underlying Action, Underlying Plaintiffs allege that personal jurisdiction exists because "a substantial part of the events giving rise to the claim . . . occurred in this District," including defendants' allegedly unlawful "marketing, promotion, advertising, sale and offering for sale products in violation of [Underlying] Plaintiffs' rights" and the "dissemination of defamatory statements about [Underlying Plaintiff] to one or more New York corporations."  Underlying Am. Compl. ¶ 14.

> substantial revenue from goods used or consumed or
> services rendered, in the state, or
>
> (ii) expects or should reasonably expect the act to
> have consequences in the state and derives
> substantial revenue from interstate or international
> commerce; or
>
>   4. owns, uses or possesses any real property situated within the state.

N.Y. C.P.L.R. § 302.  Hiscox argues that personal jurisdiction exists here under § 302(a)(1) or

(3) "for substantially the same reasons that it exists in the Underlying Action," Pl. Mem. at 12, to

wit:  Defendants allegedly sold infringing goods to customers in New York; they were sued in

New York; and they now seek indemnification for that lawsuit in this District.

   *Nautilus Insurance Co. v. Adventure Outdoors, Inc.*, 247 F.R.D. 356 (E.D.N.Y. 2007), on

which defendants rely in disputing personal jurisdiction, is apposite.  There, as here, an insurer

sought a declaration that a liability insurance policy did not cover insureds who were named as

defendants in a separate, underlying lawsuit brought in New York.  *Id.* at 357.  In the underlying

lawsuit, the plaintiff, the City of New York, sued out-of-state firearm retailers after it allegedly

documented the regular arrival of illegally possessed guns into the City that had been sold by

firearm retailers in other states.  *Id.*  The firearm retailers moved to dismiss the underlying action

for lack of personal jurisdiction, but the court held that personal jurisdiction existed under

§ 302(a)(3).  *Id.*  One retailer's insurer then brought a separate action seeking a declaration that a

liability insurance policy did not obligate it to defend or indemnify the retailer in the underlying

lawsuit.  The retailer moved to dismiss that action for lack of personal jurisdiction.  In arguing

that personal jurisdiction existed, the insurance company advanced the same argument that

Hiscox makes here.  It argued that because the firearm retailer sought indemnification in the

underlying action, the insurer's cause of action arose from the same conduct alleged in the

14

underlying action.  Thus, because personal jurisdiction existed over the firearm retailer in the

underlying lawsuit brought by New York City, the insurer argued, it also existed over the retailer

in the declaratory judgment action brought by the insurer.

The *Nautilus* court rejected that argument.  Applying § 302, it noted that, for the court to

exercise personal jurisdiction over the retailer, the insurer must show, *inter alia*, that its cause of

action "arises from" an act enumerated in § 302.  The insurer argued that because the court in the

underlying lawsuit had held it could exercise personal jurisdiction under § 302(a)(3), involving

tortious acts causing injury within the state, the insurer's claim for declaratory relief affecting

coverage for the underlying lawsuit also triggered § 302(a)(3).  But, the *Nautilus* court held, the

claim by the insurer was distinct from the claims in the underlying lawsuit.  As the court

explained, the insurer's claim arose out of "a contractual dispute between an Arizona based

insurance company and two Georgia based parties, not upon a tort action in which [insured's]

conduct outside of New York caused tortious injury to [insurer] within New York."  *Id.* at 360.

That specific personal jurisdiction existed in an underlying action centered on the alleged tort

"does not mean that New York courts can exercise personal jurisdiction over [insureds] in any

action."  *Id*; *see also Nat'l Indem. Co. v. Pierce Waste Oil Serv., Inc.*, 740 F. Supp. 721, 724

(E.D. Mo. 1990) (holding, under Missouri's long-arm statute, that insurer's declaratory judgment

action did not bring a claim arising from alleged tortious conduct in forum state); *Northland Ins.*

*Co. v. Berkebile Oil Co.*, No. Civ. A. 3:03CV00011, 2003 WL 22995127, at *5 (W.D. Va. Dec.

12, 2003) (holding that personal jurisdiction did not exist because the insurer's declaratory

judgment action arose exclusively from an out-of-state insurance policy, and although

defendants' contacts with the forum state "might have subjected [it] to suit . . . for a product

liability action, those same contacts" were insufficient to permit the court to "adjudicate a contract dispute").

So, too, here. Hiscox's claim for declaratory relief does not "aris[e] from" the transaction of business within New York by defendants. Nor does Hiscox allege that defendants' conduct caused tortious injury to it. *See* § 302(a)(1), (3). Rather, Hiscox seeks a declaratory judgment "to clarify the parties' respective rights and obligations under their [insurance] contract[s] to avoid a breach." *Nat'l Indem. Co.*, 740 F. Supp. at 724. For better or worse, its cause of action, therefore, arises out of insurance policies offered and sold in Mississippi, under Mississippi law, by an Illinois corporation, to a Mississippi corporation (Business Moves) and its principal (Bordenave), who was then-domiciled in Texas and now avers he resides in Mississippi. Compl. ¶¶ 6–9; Bordenave Aff. ¶¶ 7–10. The Policies define the extent of the contractual relationship between Hiscox and defendants and set forth their rights and responsibilities. The allegedly wrongful conduct that Underlying Plaintiffs allege in the Underlying Action does not "create additional rights or enlarge[] the scope of [Hiscox's] potential liability" to its insureds. *Nat'l Indem. Co.*, 740 F. Supp. at 724. The allegations regarding such conduct "may have *prompted* plaintiffs to seek this declaratory judgment, but they did not give rise to the rights at issue in this case. On the contrary, the parties' respective rights and the universe of [Hiscox's] liability were established when they entered into a contract" in Mississippi. *Id.*

Because Hiscox's cause of action therefore does not "aris[e] from" acts occurring in New York, § 302 does not provide a basis for this Court to exercise personal jurisdiction over Hiscox's bid for a declaratory judgment. And, as reviewed above, defendants have not waived their right to defend on grounds of a lack of personal jurisdiction. The Court therefore grants

defendants' motion to dismiss for lack of personal jurisdiction.  In light of this ruling, the Court

has no occasion to consider defendants' alternative argument that venue is improper.

### 3.  Effect of Hiscox's Proposed Amended Complaint

As noted above, on June 14, 2019, Hiscox moved to file an amended complaint.  Dkt. 48.

The Court denied that request, without prejudice, pending resolution of the motion to dismiss.

Before so ruling, the Court examined Hiscox's proposed amended complaint to determine

whether it stood potentially to alter the Court's assessment as to the exercise of personal

jurisdiction.  The Court determined not, because the proposed amended complaint does not

allege substantially new or different facts with respect to personal jurisdiction, adding only the

statements that Business Moves "has appeared in this case" and "conducts business within this

state." Dkt. 47-2 at 4.  These conclusory allegations do not disturb the analysis above.

Hiscox's proposed amended complaint also would have contained an additional claim:

that defendants breached the Policies at issue by failing to cooperate with their counsel in the

Underlying Action.  But, as pled, that proposed claim also would not "aris[e] from any of the

acts enumerated" in § 302(a).  Sections 302(a)(2)–(4), which involve the commission of tortious

conduct or the ownership or use of property within New York, are inapplicable.  So, too, is

§ 302(a)(1), which involves the "transact[ion] [of] any business within the state."  "New York

courts define transact[ing] business as purposeful activity—some act by which the defendant

purposefully avails itself of the privilege of conducting activities within the forum State, thus

invoking the benefits and protections of its laws." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239,

246 (2d Cir. 2007).  For § 302(a)(1) to apply, the Second Circuit has identified a non-exhaustive

list of factors to determine when an out-of-state defendant transacts business within New York.[3] None, however, apply to the alleged breach, as (1) it does not entail a breach of an ongoing contractual relationship between defendants and a New York entity; (2) the Policies were not negotiated or executed in New York; (3) the Policies are not alleged to designate New York in a choice-of-law provision; and (4) the Policies are not alleged to require defendants to send notices or payments into New York.

The proposed amended complaint thus would not have cured the deficient allegations as to personal jurisdiction.

**B.      Motion for Default Judgment**

In light of its finding that it lacks personal jurisdiction over defendants, the Court must, and does, deny Hiscox's request for a default judgment against them.

## CONCLUSION

For the foregoing reasons, the Court grants defendants' motion to dismiss for lack of personal jurisdiction and denies Hiscox's motion for a default judgment. The Court respectfully directs the Clerk of Court to terminate the motions pending at docket entries 32 and 38, and to close this case.

---

[3] These are: (i) whether the defendant has an ongoing contractual relationship with a New York corporation; (ii) whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; (iii) what the choice-of-law clause is in any such contract; and (iv) whether the contract requires [the defendant] to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state. *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 22–23 (2d Cir. 2004) (quoting *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996)).

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: June 26, 2019
       New York, New York